BLAKE *v.* BETHLEHEM STEEL COMPANY

[No. 235, September Term, 1960.]

*Decided May 2, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, MARBURY and SYBERT, JJ.

*Ronald H. Goodman,* with whom were *Alvin E. Friedman, Melvin Rankin* and *Friedman & Goodman* on the brief, for appellant.

*Jesse Slingluff* and *Mathias J. DeVito,* with whom was *Kenneth C. Proctor,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Baltimore County reversing an award of the Workmen's Compensation Commission which was based upon the findings and decision of the Medical Board for Occupational Diseases that the claimant was permanently totally disabled, twenty-five per cent thereof being the result of occupational disease. The trial court found as a matter of law that there was no evidence legally sufficient to show an occupational disease or aggravation thereof.

It is undisputed that the claimant is totally disabled, suffering from chronic bronchitis, pulmonary fibrosis and emphysema. The last two are medical terms used to describe the formation

of scar tissue in the lungs and the dilation and improper functioning of the alveoli or air sacs, causing shortness of breath. They are not diseases in themselves but may result from a number of different causes, infectious as well as environmental. See 2 Gray, *Attorneys Textbook of Medicine* (3d ed.) secs. 132.05 *et seq.* Dr. Shiling, who gave the testimony most favorable to the claimant's case, stated that he did not consider the condition he found was a "real pathological entity". He said: "I think sometimes the end point here of pulmonary fibrosis and emphysema may be triggered by infection, repeated infection, and infection alone. * * * I think his working conditions aggravated an underlying bronchitis and led to his total permanent disability at age fifty-eight. * * * I don't know the etiology of this condition, I am not claiming that his occupation was [the] etiological agent in producing his condition. All I am claiming even as of the chronic bronchitis, [is that] repeated exposure in the type work he did in my opinion aggravated his condition and led to worsening and perhaps premature development of total disability."

Dr. Shiling admitted that the claimant was not a robust man and had a history of bronchial pneumonia in 1924, before he went to work for the appellee in 1939. He worked for six years as a water tender and thereafter as a pipe fitter's helper in and about the blast furnaces where he was subjected to extremes of heat and cold, sometimes to water underfoot, and to a certain amount of dust or "kish" in the air, consisting largely of particles of iron oxide and carbon, given off when pig iron is placed in the furnaces about once a shift. But it was not contended that the claimant developed anthracosis, silicosis, pneumoconiosis, or other pulmonary dust disease. Dr. Shiling testified: "I am not incriminating a particular dust here." Cf. *Beechwood Coal Co. v. Lucas,* 215 Md. 248, 260. The claim is aggravation of a bronchial susceptibility. The claimant again had bronchial pneumonia in 1941, the first of a series of six attacks, accompanied by increasing cough and shortness of breath, which finally caused him to cease work altogether in 1957. The claimant smoked about a package of cigarettes daily. There was testimony that

the incidence of bronchial disorders was no higher among workers around open hearth furnaces than among the general city populations. The Medical Board first disallowed the claim and then reconsidered and allowed it, not upon any different findings of fact but upon a change in view as to the proper legal interpretation of the statute.

The claimant's case rests upon the provisions of Code (1957), Art. 101, sec. 22 (c). It is not contended that he is suffering from an occupational disease, as such. Section 22 (c) provides: *"Occupational disease aggravating other infirmity or contributing to disability or death from other cause.—* Where an occupational disease is aggravated by any other disease or infirmity, not itself compensable, or where disability or death from any other cause, not itself compensable, is aggravated, prolonged, accelerated or in anywise contributed to by an occupational disease, the percentage of such contribution to be determined by the medical board * * * shall be * * * limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability or death as such occupational disease, as a causative factor, bears to all the causes of such disability or death * * *." See also section 23 (c), providing that to be compensable an occupational disease must be "due to the nature of an employment in which the hazards of such disease actually exists, [sic], are characteristic of and peculiar to the trade, occupation, process, or employment, and is actually incurred in his employment * * *."

As pointed out in the recent case of *Mutual Chemical Co. v. Thurston,* 222 Md. 86, 96, Maryland in 1939 adopted for the first time an occupational disease coverage of a schedule type, and in 1951, changed to a general type coverage. But it is obvious that the statute was not intended to cover non-occupational health hazards. In the *Thurston* case the holding was that there was legally sufficient evidence to show that the claimant's lung damage was directly due to the inhalation of chrome dust and that such damage was characteristic of and peculiar to the industry, distinguishing *Kelly-Springfield Tire Co. v. Roland,* 197 Md. 354.

In the instant case, since chronic bronchitis and its sequelae were not shown to be characteristic of the industry, the claim is that disability from a cause not itself compensable, was "aggravated * * * or contributed to by an occupational disease * * *." The appellant argues that an ordinary disease may become occupational where it is aggravated by the occupational environment. We think, however, that such a construction would virtually read out of the statute the requirement that in order to support a claim under the language quoted, there must be a finding that, in part at least, the disability is due to an occupational disease, and the claim can be allowed only for that part. If the statute is to be broadened in the manner contended for, it should be done by the legislature and not by the courts. The statutes in a few states so provide. See 3 Schneider, *Workmen's Compensation,* § 924. Some authors argue for a broad coverage or a broad interpretation. See 1 Larson, *Workmen's Compensation Law,* § 41.61. In its first decision the Medical Board made the precise findings that the claimant's condition was "nonoccupational in character" and not "characteristic of the claimant's occupation." Even though Dr. Shiling thought the working conditions aggravated the nonoccupational bronchial condition, we think the end result can not properly be attributed, in whole or in part, to an occupational disease.

While there appears to be no Maryland case precisely in point, we think the cases in other jurisdictions generally support our view. In *Detenbeck v. General Motors Corporation,* 132 N. E. 2d 840 (N. Y.), the New York Court of Appeals considered a case in which a claimant, suffering from a congenital back injury, maintained that the type of work in which he engaged aggravated it and contributed to his final disability. The court said (p. 843): "If an employee contracts an occupational disease, he is not to be prejudiced by reason of a pre-existing illness or defect, but neither is he to be preferred over other employees by creating a different class of compensable disabilities for his benefit." In *Smith v. Sports Room Supper Club,* 181 N. Y. S. 2d 130, 132, the court said: "The mere aggravation of a disease not occupational in char-

acter is insufficient to establish an occupational disease." See also *Sanford v. Valier-Spies Milling Co.,* 235 S. W. 2d 92 (Mo.).

The appellant cites a number of cases which are distinguishable. *Schwitzer-Cummins Co. v. Hacker,* 112 N. E. 2d 221 (Ind.) and *Whitehead v. Holston Defense Corporation,* 326 S. W. 2d 482 (Tenn.) were cases, like our *Thurston* case, *supra,* where the evidence supported a finding that the claimants developed lung diseases as a direct result of exposure to particular dusts, which characteristically could be said to be a hazard peculiar to the industry. Cf. *American Bridge Division, U. S. Steel Corp. v. McClung,* 333 S. W. 2d 557 (Tenn.). Evidently, Tennessee holds that to be compensable a disability must have its origin in the working conditions. For a similar holding, see *General Chemical Division, etc. v. Fasano,* 94 A. 2d 600 (Del.). The New Jersey case of *Giambattista v. Thomas A. Edison, Inc.,* 107 A. 2d 801 (N. J. Sup.), seems to be largely based upon a broadening of the New Jersey Statute.

Since we hold that there was no evidence legally sufficient to support the finding of the Medical Board, it is unnecessary to consider the question of limitations raised by the appellee.

*Order affirmed, with costs.*