## JAMES *v.* TYLER

[No. 259, September Term, 1972.]

*Decided May 16, 1973.*

The cause was argued before MURPHY, C. J., and Mc-WILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Robert Anthony Jacques*, with whom were *Douglas R. Taylor* and *James W. Salter* on the brief, for appellant.

*S. Allan Adelman* and *Rourke J. Sheehan* for appellee.

SINGLEY, J., delivered the opinion of the Court.

This case raises the question whether a summary judgment for $4,653.59 was properly entered against the appellant James in favor of the appellee Tyler. We think it was, and shall affirm. While the facts underlying the dispute are relatively simple, the procedural aspects of the case are a little more difficult.

In August 1967, the appellant James; James' brother Roy,

and Roy's wife borrowed $5,650.00 from Seaboard Citizens National Bank of Norfolk, Virginia, apparently to satisfy an antecedent debt to Thomas' Garage, from which $5,000.00 had been borrowed for a purpose and at a time not disclosed by the record. The note which evidenced the loan was for $5,650.00, was signed by the three borrowers, and by Thomas' Garage, a partnership in which the appellee Tyler was a partner, as an accommodation maker. The note provided for repayment in 23 monthly installments of $236.00 and a final installment of $222.00. It would seem that the note was discounted for $5,000.00, with the result that $650.00 represented interest at $6^{1}/2\%$ for two years.[1]

It was Tyler's contention that eight monthly payments of $236.00 had been made on the note, totalling $1,888.00, when James, James' brother and sister-in-law defaulted, with the consequence that Tyler was required to pay the unpaid balance of $3,762.00. The note was endorsed to Tyler and it was for this sum and interest that Tyler, as holder of the note, brought suit against James in the Circuit Court for Montgomery County.[2] From a summary judgment for $3,762.00 plus interest from 18 November 1968 of $891.59 entered against James, this appeal was taken.

Set out below is the affidavit which was filed in support of Tyler's motion for summary judgment:

"I am the owner and holder of a certain negotiable promissory note dated Norfolk, Virginia, August 10, 1967, payable to the order of Seaboard Citizens National Bank, in the amount of Five Thousand Six Hundred Fifty ($5,650.00) Dollars, payable in installments as set out in the note. This note was made by ROY W. JAMES, BERYL S. JAMES, his wife, and C. E. JAMES, brother of ROY W. JAMES. After the note was negotiated at

---

1. Because the principal was being reduced by monthly payments, the effective rate was substantially in excess of $6^{1}/2\%$. No point is made of this, however, although James, in his affidavit, asserted that certain antecedent debts (not a part of the record before us) were tainted by usury.

2. It would appear that James' brother and sister-in-law had been relieved of any liability in consequence of their discharge in bankruptcy

the bank, and at the request of the maker, the note was sent by the bank to Thomas' Garage, in Norfolk and Thomas' Garage signed the note as an accommodation maker. At that time Thomas' Garage was a partnership consisting of myself (who signed for Thomas' Garage) and Mr. Tommy Thomas, since deceased. The makers of the note made eight (8) payments on the note of Two Hundred Thirty-Six ($236.00) Dollars, for a total paid by them on the note of One Thousand Eight Hundred Eighty-Eight ($1,888.00) Dollars, leaving a balance then due of Three Thousand Seven Hundred Sixty-Two ($3,762.00) Dollars. According to the records of the bank (which I have personally examined), the eight (8) payments were made on September 22, October 24, December 5, 1967, and January 12, February 20, March 19, April 11, and May 15, 1968. On November 4, 1968, on behalf of Thomas' Garage, I made six (6) payments of Two Hundred Thirty-Six ($236.00) Dollars each, which brought the note up to date through the October 1968 payment. Subsequently, Thomas' Garage, at the demand of the holder, was forced to take up the note by paying the then balance due in full. Demand had been made upon Roy W. James and his wife, who were unable to pay the note. Subsequently, Thomas' Garage made demand upon Roy James and his wife, who refused to make payment, and demand was made upon C. E. James, co-maker, who likewise refused to pay on the note. Subsequently, Roy James and his wife declared bankruptcy in the Federal Court in Norfolk, listing the note as a debt, and they have been discharged.

"C. E. JAMES is indebted to me for the above in the amount of Three Thousand Seven Hundred Sixty-Two ($3,762.00), with interest at the highest legal rate from November 15, 1968, until the debt is paid in full.

"I have personal knowledge of the facts stated

herein, and am competent to testify as a witness in this matter."

The affidavit which accompanied James' motion for denial of summary judgment is as follows:

"That I, C. E. James, am not indebted to Goldsborough S. Tyler, the plaintiff in above stated suit in Law No. 29,562, in the amount set forth in the original suit ($3,762.00 with interest at highest legal rate from Nov. 15, 1968 until debt is paid in full).

"The debt as stated was a note originally co-signed August 11, 1967 by Roy W. James, Beryl S. James, C. E. James, and Thomas Garage by Goldsborough S. Tyler, the plaintiff in this suit, to the order of Seaboard Citizens National Bank, Norfolk, Virginia in the amount of $5,650.00; said note having been co-signed by the defendant herein and Goldsborough S. Tyler, plaintiff herein. The defendant has received letters from the bank Seaboard Citizens National, showing full and complete balance in account in the amount of $2,399.89, of which then said defendant in this case being a co-signer with plaintiff in this case certainly is not indebted in the amount of $3,762.00, if at all.

"The defendant has made three (3) motions for depositions under Maryland Rules of Procedure, and at no time has motion for deposition been ordered.

"Correspondence from bank over the signatures of officers of bank, states that Roy W. James, now deceased, owed a balance of much less than stated in suit.

"Statement of Mr. Roy W. James, now deceased, as principal borrower on the co-signed note indicates that this was a usurious undertaking in that the plaintiff Goldsborough S. Tyler and his brother charged him 10% interest per month, on

one note and regular 5% interest per month on balance of undertaking, and that Thomas Garage, one co-signer on note was owned in whole or in part by plaintiff in this case, Goldsborough S. Tyler, and that Goldsborough S. Tyler refuses to appear for depositions, for discovery over long periods of time.

"The original action in debt so stated filed on or about March 4, 1970, in an affidavit by an agent, Richard L. Still, in the amount set forth in this (action of debt) of $3,762.00.

"The note signed by me originally was at some point changed. I feel that this entire suit should be exposed to the Honorable Court of Montgomery County, Maryland, for a decision. There is certainly a question of fact and a question of law. Mr. Goldsborough S. Tyler, co-signer of the note presented for suit received all assets therein for the benefit of the owner or co-owner of garage known as Thomas Garage."

If the two affidavits are compared, it will be noted that James' affidavit is only tangentially responsive to Tyler's. True, in the first paragraph, it contains a flat denial of liability, which we have held not to be a dispute of a material issue of fact, *Shaffer v. Lohr*, 264 Md. 397, 404, 287 A. 2d 42 (1972); *Frush v. Brooks*, 204 Md. 315, 320-21, 104 A. 2d 624 (1954). James' attempts to buttress his denial by hearsay statements which would clearly be inadmissible in evidence do not meet the test of Maryland Rule 610 b which requires the affidavit to "be made on personal knowledge . . . [setting] forth such facts as would be admissible in evidence . . . ."

The balance of the James affidavit is discursive, and encompasses assertions similarly inadmissible. Nowhere is there a denial that Tyler was the holder of the note, or that he made the payments to the bank. It is almost axiomatic that facts proffered in opposition to the granting of a motion for summary judgment must not only be detailed and precise, but must be admissible in evidence, if there

is to be a finding that there is a genuine dispute as to a material fact, *Shaffer v. Lohr, supra,* 264 Md. at 404; *Mullan Co. v. International Corp.,* 220 Md. 248, 257, 151 A. 2d 906 (1959).

Our summary judgment procedure under Rule 610 was reviewed in some depth in *Lipscomb v. Hess,* 255 Md. 109, 257 A. 2d 178 (1969).

Maryland Rule 610 a 1 provides:

"In an action, a party asserting a claim, whether an original claim, counterclaim, cross-claim, or third-party claim, or a party against whom a claim is asserted, may at any time make a motion for a summary judgment in his favor as to all or any part of the claim on the ground that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law."

What we said in *Lipscomb,* 255 Md. at 118, is apposite here:

"The limitations on summary judgment procedure are too well known to require elaboration. It is not a substitute for trial but a hearing to determine whether a trial is necessary, *Whitcomb v. Horman,* 244 Md. 431, 224 A. 2d 120 (1966); *Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A. 2d 563 (1956), when there is no genuine controversy, *Pullman Co. v. Ray,* 201 Md. 268, 94 A. 2d 266 (1953). The purpose of the hearing is not to determine disputed facts, but to determine whether such issues exist. *Horst v. Kraft,* 247 Md. 455, 231 A. 2d 674 (1967); *Carroccio v. Thorpe,* 222 Md. 38, 158 A. 2d 660 (1960); *Tellez v. Canton R.R. Co.,* 212 Md. 423, 129 A. 2d 809 (1957); *White v. Friel,* 210 Md. 274, 123 A. 2d 303 (1956). If facts are susceptible of more than one inference, the inferences must be drawn in the light most favorable to the person against whom the motion is made, *Lawless v. Merrick,* 227 Md. 65, 175 A. 2d 27 (1961), and in the light least favorable to the

movant, *Howard Cleaners of Baltimore, Inc. v. Perman,* 227 Md. 291, 176 A. 2d 235 (1961); *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 155 A. 2d 691 (1959)."

In *Rooney v. Statewide Plumbing,* 265 Md. 559, 563-64, 290 A. 2d 496 (1972), Judge Smith, for the Court, put it this way:

"The principles relative to consideration of a motion for summary judgment at the circuit court level are familiar and have been summarized recently in *Sherman v. Am. Bankers Life Assur.,* 264 Md. 239, 241-42, 285 A. 2d 652 (1972), and *Brown v. Suburban Cadillac, Inc.,* 260 Md. 251, 254-55, 272 A. 2d 42 (1971). The purpose is not to try the case on its merits, but to determine whether any real dispute exists as to any material fact. If the pleadings, depositions, admissions, and affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law, then summary judgment should be granted. If there is a genuine dispute as to any material fact, then it should not be granted. In reviewing such a motion we must be concerned primarily with deciding whether or not a factual issue exists. Therefore, all inferences should be resolved against the party making the motion. However, when the moving party has set forth sufficient grounds for summary judgment, the party opposing the motion must show with some precision that there is a genuine dispute as to a material fact. This showing must be by facts which would be admissible in evidence. Such a material fact must be one the resolution of which will somehow affect the outcome of the case. *Parklawn v. Nee,* 243 Md. 249, 254, 220 A. 2d 563 (1966)."

In other words, an unequivocal denial of liability, unsupported by an assertion of facts admissible in evidence, is not enough for the defendant to prevail. If he is to do so,

he must show with some precision that there is a genuine dispute as to a material fact, by asserting facts which would be admissible in evidence. Here, Tyler asserted that he paid $3,762.00, an assertion made of his own knowledge and not controverted by James; and that the borrowers had paid but $1,888.00, which is similarly unquestioned. James, on the other hand, relies on "letters from the bank" showing that $2,399.89 was the amount due as of some unspecified time; a "statement" made by his deceased brother in regard to a transaction not elsewhere referred to, and the unsupported conclusion that the note which he had signed "was at some point changed." These were not facts admissible in evidence, as the trial court found, to show that there was a genuine dispute as to a material fact. For this reason, we shall affirm the judgment entered below. In view of the result which we reach, it becomes unnecessary for us to pass on Tyler's motion to strike a portion of the record extract.

*Judgment affirmed, costs to be paid by appellant.*