582 A.2d 996

**LETTERING UNLIMITED et al.**

v.

**Janet GUY et al.**

**No. 34, Sept. Term, 1990.**

Court of Appeals of Maryland.

Dec. 11, 1990.

Alfred J. Dirska (Dirska and Levin, on brief), Columbia, for appellants.

Antonio R. Lopez and Theodore B. Cornblatt (Alfred M. Porth, Smith, Somerville & Case, on brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

RODOWSKY, Judge.

In this workers' compensation case the issue is whether the claimant's bilateral carpal tunnel syndrome is an occupational disease or an accidental injury. Resolution of the issue controls which of two compensation insurers is on the risk.

The claimant, Janet Guy (Guy), was employed by Lettering Unlimited. She was awarded temporary total disability for the period October 31, 1987, to January 14, 1988, by the Workmen's Compensation Commission (the Commission). The Commission found that Guy sustained an occupational disease, that the date of last injurious exposure was October 30, 1987, and the first date of disablement was October 31, 1987. West American Insurance Company (West American) ceased being Lettering Unlimited's compensation insurer on October 27, 1987, and Hartford Accident & Indemnity

Co. (Hartford) went on the risk on October 28. Accordingly, the Commission dismissed Guy's claim against West American and entered the award against Lettering Unlimited and Hartford.

The employer and Hartford appealed to the Circuit Court for Anne Arundel County contending, *inter alia,* that Guy had suffered an accidental injury or, if the condition was an occupational disease, that the date of last injurious exposure was prior to October 28. Were Hartford successful on either contention, West American would be responsible for Guy's benefits.

The action was tried without a jury. At the close of Hartford's case, West American moved for judgment which the circuit court granted. It acted pursuant to Maryland Rule 2–519(b): "When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff...." In so ruling the court observed that "[t]here's testimony from Ms. Guy that she had this [painful condition] ... she was suffering with it before. This wasn't some unexpected result out of her normal employment."

The employer and Hartford appealed to the Court of Special Appeals. We issued the writ of certiorari on our own motion prior to consideration of the case by that court.

Hartford's principal contention is that Guy's disability was produced by her performing intensively, over a period of two weeks, a silk screening process. Hartford submits that this period of work was so unusual that the disability should be classified as an accidental injury. West American contends that, throughout Guy's employment at Lettering Unlimited, silk screening had been a task which Guy was called upon periodically to perform so that the injury was not "accidental."

Our task is to determine whether the trial court's findings were clearly erroneous. Inasmuch as judgment was en-

tered pursuant to the above-quoted provisions of Rule 2–519(b), "the trial judge was allowed to evaluate the evidence, *as though he were the jury*, and to draw his own conclusions as to the evidence presented, the inferences arising therefrom, and the credibility of the witnesses testifying." *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 353, 517 A.2d 1122, 1127 (1986). The fact-finding aspect of Rule 2–519(b) applied here is derived from Fed.R.Civ.P. 41(b). In reviewing judgments entered under that aspect of Rule 41(b) federal appellate courts apply the clearly erroneous standard. *See Wilson v. United States*, 645 F.2d 728 (9th Cir.1981); *Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152 (8th Cir.), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1977).

Three witnesses, Guy, her attending physician, and Hartford's examining physician testified in the circuit court. We summarize the relevant evidence.

Guy, then age twenty, began work for Lettering Unlimited in 1980. After the first year or two her primary duties were to do personalized machine embroidery on jackets and silk screening on tee shirts. She was an "all-round person" capable of doing any of the tasks in the shop. Because embroidering required more skill, that was Guy's predominant task.

The silk screening process, as described by Guy, involves applying ink through a screen onto a shirt. The shirt is first held in place on a flat surface by "a metal thing" and a screen is pulled down on top of that. "You put ink at the top of the screen with a spatula, and you take both hands and you have to push down and pull back as hard as you can at the same time to make the squeegee flex and pull the ink through the screen to go onto the shirt."

Silk screening was something which Guy was asked to do on an ongoing, although somewhat unpredictable, basis. She would do "a job here and a job there in [her] spare time," or when there was a great demand for silk screening, or when the shop was short staffed.

Beginning several years before 1987, Guy had had problems with her left hand, consisting of soreness in the fingers and "a little bit of discomfort and pain up into [her] elbow." The condition only arose when she worked "a lot." It would go away after resting, for example, after resting over the weekend.

In August 1987, Guy returned to work following a three month maternity leave. Lettering Unlimited had insufficient personnel to perform silk screening, and Guy was exclusively assigned to silk screening for two consecutive weeks. She had never before done so much silk screening on a continuous basis. Following that stint she experienced extreme pain and swelling in her right hand and soreness and pain in her left hand.

On October 12, 1987, Guy saw her family physician, Dr. Robert P. Kroopnick. He suspected bilateral carpal tunnel syndrome, but his working diagnosis was sprain of the right wrist. He recommended that Guy discontinue working, take an anti-inflammatory medicine and return in two weeks if the condition were not improved.

Guy nevertheless continued working through October 30, 1987. On October 26 she again saw Dr. Kroopnick. From various tests he concluded that surgery was probably required. He apparently embodied that opinion in a note dated October 30 explaining why Guy would thereafter be absent from work. Guy underwent a right carpal tunnel release in November 1987. A similar operation was performed on her left hand in October 1988.

■ "In this State ... the failure of some essential function of the body[ ] is held to be accidental injury only when it results from some unusual strain or exertion of the employee or some unusual condition in the employment." *Kelly–Springfield Tire Co. v. Daniels*, 199 Md. 156, 161, 85 A.2d 795, 797–98 (1952). And *see Courtney v. Board of Trustees*, 285 Md. 356, 363, 402 A.2d 885, 889 (1979) (analogizing statutes authorizing payment of accidental disability retirement benefits to accidental injury under workers' com-

pensation statute). "[I]n Maryland the term 'accidental injury' does not include unexpected results not produced by accidental causes...." *Bethlehem Steel Co. v. Golombieski,* 231 Md. 124, 129, 188 A.2d 923, 926 (1963). In the case at hand silk screening was part of Guy's regular duties, not simply as a matter of job description, but by actual performance. Although the two week stint in August was the longest continuous time during which Guy performed that task, the circuit court was not clearly erroneous in concluding that the disability was the result of an occupational disease as opposed to an accidental injury.[1]

Hartford emphasizes *Foble v. Knefely,* 176 Md. 474, 6 A.2d 48 (1939) and *Holbrook v. GM Assembly Division, General Motors Corp.,* 15 Md.App. 425, 291 A.2d 171 (1972). In *Foble* the claimant was a sewing machine operator in a shirt factory. The needle on the sewing machine typically was raised and lowered by a lever controlled by pressure applied by the operator's knee. The lever on the machine operated by the claimant was defective. Among other defects a plate, adjustable on the lever rod to the height of the operator's knee, had turned so that the claimant was pressing her knee against the set screw. This Court affirmed a circuit court judgment holding that the claimant had suffered an accidental injury. R. Gilbert & R. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 5.1, at 84–85 (1988) have commented on *Foble.*

"It appears that some students of the [Maryland Workers' Compensation] Act accept the above facts as standing for the proposition that injury caused by repetitive trauma constitutes a compensable claim. This notion is mistaken and subverts the actual basis of the decision by the Court of Appeals. A thorough review of *Foble* dis-

---

**1.** Carpal tunnel syndrome has been recognized as an occupational disease in other contexts in recent Maryland case law. *See Miller v. Western Elec. Co.,* 310 Md. 173, 528 A.2d 486 (1987); *James v. General Motors Corp.,* 74 Md.App. 479, 538 A.2d 782 (1988). At no point did appellants argue that Guy's medical difficulties were neither an accidental injury nor an occupational disease.

closes that the knee lever which caused the injury was defective.... It was the *additional* trauma created by the machine's fault which made the injury an accidental one. Nowhere within the opinion did the Court of Appeals hold that injury caused by repetitive but ordinary, usual or expectable trauma could provide the basis for a compensable accidental injury. While ordinary or usual job-related repetitive trauma cannot predicate a claim for accidental injury, it might form the basis for an occupational disease claim."

(Footnotes omitted). We agree with the authors' analysis of *Foble.*

*Holbrook v. GM Assembly Division* involved an automobile assembly line worker, the circumstances of whose job had changed. For some years the worker had performed his task seated on a stool. Apparently in order to expedite the performance, the employer directed the claimant to work in a kneeling position. Knee pads were provided which bit into the claimant's legs when his knees were bent and the skin on the claimant's knees was irritated from friction with the pad. Guy's claim does not involve any change of circumstances in the silk screening technique.

Hartford also argues that the day of last injurious exposure, by which Hartford means of silk screening by Guy, must be earlier than October 28 because Dr. Kroopnick recommended on October 12 that Guy not work. But there is testimony by Guy as follows:

"Q. Well, specifically on that date, October 28, 1987, if you recall doing any silk screening on that date[?]

"A. Maybe forty-five minutes for each job."

Decisions of the Commission are prima facie correct, and the burden of proof is upon the party attacking the Commission's decision. Md.Code (1957, 1985 Repl.Vol.), Art. 101, § 56(c). To the extent that Guy's testimony was ambiguous, it was Hartford's obligation to clarify the same. The circuit court was not clearly erroneous in concluding that

the last day of injurious exposure was the last day of work by Guy at Lettering Unlimited.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.