602 A.2d 261

Jeanette L. LeCOMPTE

v.

UNITED PARCEL SERVICE, INC., et al.

No. 943, Sept. Term, 1991.

Court of Special Appeals of Maryland.

March 3, 1992.

Scott W. Westerberg (David B. Purdum and Rochlin & Settleman, P.A., on the brief), Baltimore, for appellant.

Craig T. Walsworth (Campen & Walsworth, P.A., on the brief), Easton, for appellees.

Argued before MOYLAN, ALPERT and DAVIS, JJ.

DAVIS, Judge.

The appellant, Jeanette L. LeCompte (LeCompte), challenges a decision of the Circuit Court of Talbot County to grant summary judgment in favor of United Parcel Service, Inc. and Liberty Mutual Fire Insurance Co. (appellees). LeCompte's appeal stems from her claim that she suffered a compensable occupational disease as a consequence of her employment as a temporary worker for United Parcel Service.

## FACTS

United Parcel Service (UPS), located in Easton, Maryland, hired Lecompte during the Christmas season as a temporary worker assigned to duties as a "jumper." LeCompte's job was to jump from a UPS truck—a distance of approximately 14 to 16 inches—and carry packages to homes or businesses. LeCompte, a 31–year–old Denton, Maryland woman, estimated that she jumped from the truck between 100 and 260 times per day to fulfill her delivery duties.

LeCompte started work on November 27, 1989, and experienced feelings of "tiredness" and "stress" in her knees during the first week. Around December 5, 1989, LeCompte noticed tenderness and swelling in both knees and sought medical treatment the following day. Her problem was diagnosed as bilateral pes anserinus bursitis. Following several more office visits, LeCompte underwent surgery on January 16, 1990, in the form of an arthroscopic lateral release and chondral excision of the medial femoral condyle and medial patellar facet. The post-operative diagnosis was a lateral subluxation of the right patella with chondromalacia of the medial patellar facet and chondral defect of the medial femoral condyle. The appellant underwent physical

therapy, and on April 10, 1990, her doctor gave her permission to return to work.

The appellant filed a claim with the Workers' Compensation Commission (the Commission), which issued an order on May 24, 1990, stating that she did not sustain an occupational disease arising out of and in the course of employment as alleged to have occurred on December 5, 1989, and that her disability is not the result of an alleged occupational disease. LeCompte appealed her case to the circuit court, where the trial judge granted the appellees' motion for summary judgment.

In her appeal of the lower court's decision, appellant raises a singular issue:

Whether the lower court erred in finding as a matter of law that the appellant did not sustain an occupational disease and in granting summary judgment in favor of the appellees pursuant to the provisions of Maryland Rule 2–501.

## DISCUSSION

Maryland's workers' compensation law provides that compensation for an occupational disease is payable to an employee only if

(1) Such disease is due to the nature of an employment in which the hazards of the disease actually exist, and it may reasonably be concluded, based on the weight of the evidence, that the disease was incurred as a result of his employment; or

(2) The manifestations of the disease are consistent with those known to result from exposure to a given physical, biological, or chemical agent attributable to his type of employment, and it may reasonably be concluded, based on the weight of the evidence, that the disease was incurred as a result of his employment.

Md.Ann.Code art. 101, § 23(c) (1985 Repl.Vol.).[1]

The Code defines "occupational disease" as "the event of an employee's becoming actually incapacitated, either temporarily, partially or totally, because of a disease contracted as the result of and in the course of employment...." Md.Ann.Code art. 101, § 67(13) (1985 Repl.Vol.).[2]

Until 1939, the Maryland Legislature did not recognize occupational disease as a compensable claim. *Belschner v. Anchor Post Products, Inc.,* 227 Md. 89, 92, 175 A.2d 419 (1961). In an often-quoted decision, the Court of Appeals defined occupational disease as "some ailment, disorder, or illness which is the *expectable result* of working under conditions naturally inherent in the employment and inseparable therefrom, and is ordinarily slow and insidious in its approach." *Foble and Knefely,* 176 Md. 474, 486, 6 A.2d 48 (1939) (emphasis added). In *Victory Sparkler Co. v. Francks,* 147 Md. 368, 379, 128 A. 635 (1925), a case penned fourteen years earlier, the Court said:

> An occupation or industry disease is one which arises from causes incident to the profession or labor of the party's occupation or calling. It has its origin in the inherent nature or mode of work of the profession or industry, and it is the usual result or concomitant. If, therefore, a disease is not a customary or natural result of the profession or industry, *per se,* but is the consequence of some extrinsic condition or independent agency, the disease or injury cannot be imputed to the occupation or industry, and is in no accurate sense an occupation or industry disease.

In the instant case, the appellant presents the question of whether the trial court erred in granting appellees' motion for summary judgment. The Commission decided that the appellant had not sustained an occupational disease. We

---

1. Now codified as § 9–502(d)(1)(i) and (ii), Md. Labor and Employment Code Ann.

2. Now codified as § 9–101(g), Md. Labor and Employment Code Ann.

note that "[d]ecisions of the Commission are prima facie correct, and the burden of proof is upon the party attacking the Commission's decision." *Lettering Unlimited v. Guy,* 321 Md. 305, 311, 582 A.2d 996 (1990); Md.Ann.Code art. 101, § 56(c) (1985 Repl.Vol.).[3]

In *May Dep't Stores v. Harryman,* 65 Md.App. 534, 501 A.2d 468 (1985), *aff'd* 307 Md. 692, 517 A.2d 71 (1986), a workers' compensation case, we discussed the function of summary judgment, which is controlled by Md. Rule 2–501. A motion for summary judgment "permits the trial judge to determine if there is a genuine dispute as to any material fact and if the moving party is entitled to judgment as a matter of law." *Id.* 65 Md.App. at 538, 501 A.2d 468; *Kletz v. Nuway Distribs.,* 62 Md.App. 158, 161, 488 A.2d 978 (1985); *Fireman's Fund Ins. Co. v. Rairigh,* 59 Md.App. 305, 313, 475 A.2d 509, *cert. denied,* 301 Md. 176, 482 A.2d 502 (1984). "The function of appellate review of a ruling on a motion for summary judgment is to decide whether disputed issues of material fact exist, not to decide those issues or determine their credibility." *Id.; James v. Tyler,* 269 Md. 48, 54, 304 A.2d 256 (1973); *Howard Cleaners v. Perman,* 227 Md. 291, 296, 176 A.2d 235 (1961); *Sanitary Facilities, II, Inc. v. Blum,* 22 Md.App. 90, 100, 322 A.2d 228 (1974).

The appellant avers that the question of whether she sustained an occupational disease created a material fact as to which there was a genuine dispute and that the appellees were not entitled to summary judgment as a matter of law. We disagree.

In granting summary judgment, the lower court determined that LeCompte's knee problems were the result of a pre-existing condition. The trial judge added, however, that that was not the dispositive factor in his decision to grant summary judgment.

---

**3.** Now codified as § 9–745(b)(1) and (2) of Md. Labor and Employment Code Ann.

[E]ven with the pre-existing condition, that can ripen into an occupational disease, and a compensible [sic] occupational disease, if there are *distinctive employment hazards* which act upon that pre-existing condition. And therein lies the nub of this Court's ruling. I do not find in this case that there were distinctive employment hazards, uh, as opposed to counsel's finding that there were, uh, I find that there were not. I feel that the acts of Ms. LeCompte in getting in and out of the truck as many times as she did per day, are not that distinctive, inherent, unusual. Uh, I find that every truck driver in the country that delivers—and 60 to 70 percent of the goods in this country, I think, now are delivered by trucks—all of those folks face the same hazards, if hazards they be, and therefore, I do not find that there were any distinctive employment hazards in Mrs. LeCompte's employment. For that reason, I do not find that there was anything which aggravated her pre-existing condition to ripen it into an occupational disease. I feel that rather than that, that she had a degenerative disease which caused her disability, if disability she had. [Emphasis added.]

Significantly, LeCompte's knee problems began her first week on the job. The appellant, who does not dispute that she suffered from a pre-existing condition, looks largely to *Lettering Unlimited v. Guy, supra,* as authority for her contention that her problems were the result of occupational disease. On the other hand, the appellees postulate that, because LeCompte's condition was not "slow and insidious in its approach," it should not be considered an occupational disease.

In *Lettering,* the claimant's duties were to do personalized machine embroidery on jackets and silk screening on tee shirts, the latter being a task she performed intermittently during her approximately seven years of employment. For several years prior to 1987, she had complained of some soreness and pain in her left hand. In August 1987, the claimant returned from a three month maternity leave and performed only silk screening for two consecutive

weeks, following which time she experienced extreme pain and swelling in her right hand and soreness and pain in her left hand. The claimant underwent separate operations in both hands for bilateral carpal tunnel syndrome. The lower court concluded that the trial court did not err in concluding that her condition was the result of an occupational disease. The Court of Appeals affirmed.

As part of its analysis in *Lettering*, the Court quoted with approval a paragraph dealing with repetitive trauma that was taken from the *Maryland Workers' Compensation Handbook*, which discussed *Foble v. Knefely, supra*, where the Court determined that a sewing machine operator's knee problems that began about two weeks after she started work constituted an accidental injury as opposed to an occupational disease:

> "It appears that some students of the [Maryland Workers' Compensation] Act accept the above facts as standing for the proposition that injury caused by repetitive trauma constitutes a compensable claim. This notion is mistaken and subverts the actual basis of the decision by the Court of Appeals. A thorough review of *Foble* discloses that the knee lever which caused the injury was defective.... It was the *additional* trauma created by the machine's fault which made the injury an accidental one. Nowhere within the opinion did the Court of Appeals hold that injury caused by repetitive but ordinary, usual or expectable trauma could provide the basis for a compensable accidental injury. While ordinary or usual job-related repetitive trauma cannot predicate a claim for accidental injury, it might form the basis for an occupational disease claim."

(Footnotes omitted).

*Lettering*, 321 Md. at 310–11, 582 A.2d 996 (emphasis added), quoting R. Gilbert and R. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 5.1, at 84–85 (1988).

In both *Foble* and *Lettering,* the respective claimants suffered acute physical problems after performing a specific task for a brief period of time, although in *Lettering,* the claimant had experienced mild problems earlier.

Summary judgment was properly granted as a matter of law because there was no genuine dispute as to the sole material issue of fact, *i.e.,* whether LeCompte suffered an occupational disease. Even though *Lettering* clearly states that *"ordinary or usual* job-related repetitive trauma ... *might* form the basis for an occupational disease claim," *Lettering,* 321 Md. at 311, 582 A.2d 996 (emphasis added), the trial court in the instant case emphasized that there were no "distinctive employment hazards in Mrs. Le-Compte's employment." In view of *Lettering,* while the lack of "distinctive" or "unusual" employment hazards is not dispositive of occupational disease in cases of job-related repetitive trauma, the repetitive character of the trauma must be averred. By definition, appellant's condition cannot be the result of repetitive trauma in the instant case, since appellant's condition manifested itself the first week on the job.

Keeping in mind that a reviewing court must treat the Commission's finding that LeCompte did not suffer an occupational disease as prima facie correct, there were no facts demonstrating either (1) repetitive trauma or (2) that the alleged trauma was unique to appellant's job.

The appellees argue that an occupational disease is a condition that is "ordinarily slow and insidious in its approach." *Foble,* 176 Md. at 486, 6 A.2d 48. For interpretation, they point to our decision in *Montgomery County Police Dep't v. Jennings,* 49 Md.App. 246, 252, 431 A.2d 721 (1981), where we said that

> [t]he "slow and insidious" nature of occupational disease necessarily betokens a lapse of time between the date of its contraction and the time when employment must cease.

As Larson has expressed it in his treatise on *Workmen's Compensation Law:*

"Occupational disease cases typically show a long history of exposure without actual disability, culminating in the enforced cessation of work on a definite date."

The appellees contend that LeCompte's condition was not "slow and insidious" because she developed problems during her first week of work. The Court in *Foble* said the development of occupational disease is "ordinarily slow and insidious." The general rule is that most occupational disease cases involve conditions that develop over time. As the Court said in *Montgomery Co. v. McDonald*, 317 Md. 466, 474, 564 A.2d 797 (1989), "[I]ncremental onset of an occupational disease is the rule rather than the exception." We perceive no facts alleged by appellant which would permit the fact finder to conclude that appellant's condition developed over a period of time as in *Lettering* (seven years intermittent employment) or that the condition was a special incidence of appellant's duties as a jumper.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.