623 A.2d 1311

**ALLIED–SIGNAL, INC., et al.**

v.

**Levon Annie BOBBITT.**

**No. 1400, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

May 4, 1993.

David A. Skomba (Rudolph L. Rose, Heather H.P. Vovakes and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellants.

Philip Sturman and David E. Fink (Ingerman & Horwitz, on the brief), Baltimore, for appellee.

Argued before ALPERT, FISCHER and CATHELL, JJ.

CATHELL, Judge.

Appellants, Allied–Signal, Inc. (hereinafter "Employer") and The Travelers Indemnity Company of Illinois (hereinafter the "Insurer"), filed this appeal seeking review of the decision of the Circuit Court for Baltimore City reversing the Maryland Workers' Compensation Commission (hereinafter "Commission"). The Commission had found that Levon Annie Bobbitt, appellee, did not sustain a compensable occupational disease of left shoulder impingement syndrome [1] arising out of and in the course of employment. Appellants present two issues in this appeal:

    I. Did the court err in excluding the designated representative of the employer/insurer pursuant to its sequestration order?

    II. Did the court err in submitting the case to the jury when there was legally insufficient evidence to establish a claim for an occupational disease?

## THE FACTS

Appellee had worked for the Employer for approximately seven years when she reported difficulties with her left shoulder. She filed a claim with the Commission alleging that she sustained an injury to her left arm/shoulder on or about August 8, 1990. After a full evidentiary hearing on July 18,

---

1. Shoulder impingement syndrome apparently is a degenerative condition involving bone spurs which can cause the pinching of the bursa and/or rotator cuff between the head of the humerus and the acromion.

1991, the Commission found that appellee did not sustain an occupational disease and disallowed her claim.

Appellee appealed to the Circuit Court for Baltimore City and requested a jury trial. The case was heard on February 11 through February 13, 1992. Prior to the seating of the jury, appellants moved to sequester the witnesses. Counsel for appellee asked that James Sweeney, the designated representative of the Employer, be excluded from the courtroom if he would testify. Appellants argued that this was inappropriate under *Safeway Stores, Inc. v. Watson,* 317 Md. 178, 562 A.2d 1242 (1989); however, the lower court excluded Sweeney. After reviewing the case, the court realized its error and near the end of the direct examination of appellee allowed Sweeney to return to the courtroom and take his place at the trial table.

During the trial, appellee, a co-worker, and James Sweeney, her supervisor, testified regarding the working conditions of an assembly repair person. Appellee's job involved repairing electronic units, which weighed between fifteen and twenty pounds. The number of units repaired varied daily; appellee testified that she would repair from three to twenty units a day. Appellee would pick up a unit from a shelf and bring it to her work station which consisted of a table similar to a desk and an adjustable office-type chair. She would then perform the repairs. When she had finished the work, she would return the unit to a set of four shelves for inspection. Two of the shelves were at chest level or higher. Therefore, appellee argued, she would be lifting to the top two shelves one-half of the time. Occasionally, the inspector would come to her station, eliminating the need for her to carry the unit to the shelf.

Dr. Edward Cohen testified for appellants. He stated that shoulder impingement syndrome "generally is a degenerative type of condition, a wear and tear phenomenon." When asked whether the shoulder condition was causally related to appellee's occupation, Dr. Cohen responded, "My opinion again is that there is no evidence ... in the medical literature or the description of her occupation as she describes it that would predispose to the development of an impingement syndrome."

He further testified that appellee's job, as described in her written job description, would not cause the degenerative changes shown in her test results. He stressed that the shoulder problem was caused by degenerative conditions including bone spurs and was not a result of her occupation. A patient, however, with such changes would be prone to aggravating her pre-existing condition with activity.

Dr. Ronald Byank, appellee's expert, agreed that appellee had arthritic conditions. He could not say with certainty that the arthritis was caused by her job activities, but could only say "that it is possible that the work activities contributed to it. . . ." He further stated that the shoulder impingement syndrome was caused by:

repetitive activities involving working with the arms, either in front of or in a raised up or overhead type of position. And every time you bring your arm forward, you are pinching the bursa and the rotator cuff between two bony prominences, one being the head of the humerus and the other being the acromion.

And someone who is doing this type of activity in a—on a daily basis frequently is at least predisposed to develop this condition. Not everybody who does this work obviously gets the condition, but someone who does this type of work is at least a setup to get it.

And somebody who is just doing work sitting at a desk and not doing any work in front of them or over their head generally would not be . . . predisposed or disposed to this.

He found that this type of problem is inherent in the work activities of appellee. He testified that "with or without the spur she would have developed the problem anyway."

At the close of appellee's case and at the close of all the evidence, appellants moved for judgment. The lower court denied both motions. The jury returned a verdict in appellee's favor, finding that she did sustain an occupational disease arising out of and in the course of her employment. Appellants moved for a judgment n.o.v. and new trial, which the court denied without a hearing. Appellants then noted this appeal.

## I.

██ Relying on *Safeway Stores, Inc. v. Watson,* 317 Md. 178, 562 A.2d 1242 (1989), appellants contend that the lower court committed reversible error when it excluded James Sweeney, the Employer's corporate representative. Appellee maintains that, even if it were error to exclude Sweeney, it is not reversible error.

Maryland Rule 2–513(a) allows "[a] party that is not a natural person [to] designate a representative to remain in the courtroom, even though the representative may be a witness." In *Watson,* the Court of Appeals discussed the proper interpretation of this portion of the rule. The Court stated that the language of Rule 2–513 was subject to two interpretations: "Under one interpretation, whomever Safeway appoints becomes its 'representative.' Under the other interpretation, Safeway may appoint only someone who is already its 'representative.'" *Watson,* 317 Md. at 181, 562 A.2d 1242. The Court opined that "the history of our Rule favors the former interpretation, or at the very least an expansive reading of the term 'representative' if the latter interpretation is accepted." *Id.* After examining the history of the rule, the Court concluded: "The language and history of Rule 2–513 make it clear that a party that is not a natural person has very broad latitude in the selection of a representative when witnesses are excluded, and the exercise of this right is not subject to the discretion of the trial judge." *Id.* at 183, 562 A.2d 1242 (footnote omitted). Safeway chose as its representative an employee, who had been assigned to the case from the beginning, from a firm which investigated and adjusted workers' compensation claims for Safeway. The Court held that this person was eligible to be designated by Safeway under either interpretation of the Rule.

██ In the case *sub judice,* the Employer chose one of its own employees, a supervisor who worked directly with appellee. Appellee asserts that "[t]he appellants are attempting to use *Watson* to circumvent any sequestration of their choice." We do not agree. *Watson* gives a corporation wide latitude in choosing the representative it deems appropriate. The Em-

ployer is not limited to directors or adjusters. Even under the more limited interpretation of the rule, Sweeney was eligible to be designated by the Employer as its representative. As in *Watson*, it was error to deny the Employer the right to have Sweeney present at the counsel table.

■ The question remains whether that error requires reversal of the judgment. In *Watson*, the Court of Appeals stated: "We conclude that it is appropriate to presume prejudice from the wrongful exclusion of a party, or its representative, from a trial." 317 Md. at 184, 562 A.2d 1242. *See also Harris v. Harris*, 310 Md. 310, 319–20, 529 A.2d 356 (1987). In the case at bar, appellee asserts that Sweeney "was to be a body, to personify the corporation," that "[h]e did not participate in the investigation," [2] and that there is no allegation that he had any authority to make trial or settlement decisions for the Employer. In addition, appellee points out that Sweeney was only excluded for a portion of the Claimant's direct examination while in *Watson* the representative was excluded for the entire time. We do not find these facts persuasive. Although the Employer was deprived of its representative for a limited amount of time, it was during the time that one of appellee's most crucial witnesses, appellee, testified. The Employer's representative, a supervisor who worked directly with appellee, would likely be of most assistance to appellants' counsel during the testimony of appellee. It was this representative who was most familiar with the working conditions being testified to by appellee.

At oral argument, appellee pointed out that Sweeney had been present during appellee's testimony before the Commission and that he thus had an opportunity to apprise appellants' counsel of whatever matters he deemed important relating to the position of appellant. We are unpersuaded. We note that at the Commission level, the issues are resolved by "experts." In a jury trial, they are resolved by laymen. That which is crystalline to the expert may well be opaque to laymen. In

---

**2.** In the appellants' reply brief, they point out that Sweeney was actively involved in the investigation of the claim.

the case *sub judice,* appellants presented no witnesses at the Commission level, presumably preferring to rely on the Commission's expertise in resolving the issue. A contrary situation may well exist when a jury becomes the forum for the resolution of technical issues. If any distinction between the importance of management representatives at either the Commission level or jury trial level exists, the presence of a designated representative at the jury level is, as we see it, more important. We cannot say that no prejudice to appellants occurred as a result of the trial court's error. Appellee has failed to overcome the presumption of prejudice. Accordingly, we must remand the case for a new trial.

## II.

Although we must remand this case for a new trial, we find it necessary to address appellants' second issue. They contend that the lower court erred in denying their motion for judgment and in submitting the case to the jury because there was insufficient evidence to establish that appellee suffered an occupational disease.

Maryland Rule 2–519(b) provides:

When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as a trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

As we stated in *James v. General Motors Corp.,* 74 Md.App. 479, 484–85, 538 A.2d 782, *cert. denied,* 313 Md. 7, 542 A.2d 844 (1988):

This Rule makes clear that when ruling on a motion for a judgment the trial judge must consider the evidence, including the inferences reasonably and logically drawn therefrom, in the light most favorable to the party against whom the motion is made. If there is any evidence, no matter

how slight, legally sufficient to generate a jury question, the motion must be denied. On the other hand, where the evidence is not such as to generate a jury question, *i.e.,* permits but one conclusion, the question is one of law and the motion must be granted. An appellate court reviewing the propriety of the grant or denial of a motion for judgment by a trial judge must conduct the same analysis. [Citations omitted.]

Thus, if there are any disputed issues of fact, this rule precludes the trial court from resolving them, unless there is no jury. *See Market Tavern, Inc. v. Bowen,* 92 Md.App. 622, 650–51, 610 A.2d 295 (1992); *Twelve Knotts Ltd. Partnership v. Fireman's Fund Ins. Co.,* 87 Md.App. 88, 98, 589 A.2d 105 (1991); *Garrison v. Shoppers Food Warehouse,* 82 Md.App. 351, 354, 571 A.2d 878 (1990); *Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 354, 517 A.2d 1122 (1986).

Before analyzing the facts of the case at bar, we will review the relevant provisions of the Workers' Compensation Act pertaining to occupational disease.

An occupational disease is defined as:

[A] disease contracted by a covered employee:

(1) as the result of and in the course of employment; and

(2) that causes the covered employee to become temporarily or permanently, partially or totally incapacitated.

Md.Code Ann., Lab. & Emp. § 9–101(g) (1991). An employer and insurer are required to provide compensation only if

(1) the occupational disease that caused the ... disability:

(i) is due to the nature of an employment in which hazards of the occupational disease exist and the covered employee was employed before the date of disablement ... and

(2) on the weight of the evidence, it reasonably may be concluded that the occupational disease was incurred as a result of the employment of the covered employee.

Lab. & Emp. § 9–502(d).

Until 1939, the Maryland Legislature did not recognize occupational disease as a compensable claim. *Belschner v.*

*Anchor Post Products, Inc.*, 227 Md. 89, 92, 175 A.2d 419 (1961). In an often-quoted decision, the Court of Appeals defined occupational disease as "some ailment, disorder, or illness which is the *expectable result* of working under conditions naturally inherent in the employment and inseparable therefrom, and is ordinarily slow and insidious in its approach." *Foble [v.] Knefely*, 176 Md. 474, 486, 6 A.2d 48 (1939) (emphasis added). In *Victory Sparkler Co. v. Francks*, 147 Md. 368, 379, 128 A. 635 (1925), a case penned fourteen years earlier, the Court said:

> An occupation or industry disease is one which arises from causes incident to the profession or labor of the party's occupation or calling. It has its origin in the inherent nature or mode of work of the profession or industry, and it is the usual result or concomitant. If, therefore, a disease is not a customary or natural result of the profession or industry, *per se,* but is the consequence of some extrinsic condition or independent agency, the disease or injury cannot be imputed to the occupation or industry, and is in no accurate sense an occupation or industry disease.

*LeCompte v. United Parcel Serv., Inc.*, 90 Md.App. 651, 654, 602 A.2d 261 (1992). *See also Lovellette v. City of Baltimore,* 297 Md. 271, 280, 465 A.2d 1141 (1983); *Gunter v. Sharp & Dohme, Inc.*, 159 Md. 438, 443, 151 A. 134 (1930) ("An occupational disease is a diseased condition arising gradually from the character of the employee's work....").

## A.

■ Appellants first assert, relying on *Blake v. Bethlehem Steel Co.*, 225 Md. 196, 170 A.2d 204 (1961), that "[t]he aggravation of a pre-existing nonwork-related condition by the work environment does not constitute an occupational disease." This is a correct statement of the holding in *Blake;* however, that holding is not applicable to the facts of the present case.

The claimant in *Blake* argued that "an ordinary disease may become occupational where it is aggravated by the occupation-

al environment." *Id.* at 200, 170 A.2d 204. The Court of Appeals disagreed, stating:

> We think, however, that such a construction would virtually read out of the statute the requirement that in order to support a claim . . . there must be a finding that, in part at least, the disability is due to an occupational disease, and the claim can be allowed only for that part.

*Id.* The claimant had suffered from a bronchial condition that worsened, leading to pulmonary fibrosis and emphysema. The Court noted that the Medical Board had found that the "condition was 'nonoccupational in character' and not 'characteristic of the claimant's occupation.'" *Id.* The Court concluded, therefore, that "the end result can not properly be attributed, in whole or in part, to an occupational disease." *Id.*

In the case *sub judice,* appellants assert that appellee's pre-existing condition, arthritis, is not characteristic of the industry and was not caused by her occupation. We note that under the *Blake* analysis the focus is not whether the pre-existing condition is occupational in character but whether the resulting condition is due, in part at least, to the occupation. Appellants believe that the existence of the arthritis precludes a finding of an occupational disease because the resulting condition, shoulder impingement syndrome, was due to the aggravation of the arthritic condition. Although there is evidence that supports this argument, we must view the evidence in the light most favorable to appellee.

Dr. Byank testified that the working conditions of appellee possibly contributed to her arthritis; however, he specifically stated that with or without the arthritis, appellee would have developed this condition. He further stated that the shoulder impingement syndrome resulted from the repetitive activities inherent in her work; "you can not separate the condition from the work. . . ." This testimony establishes that even if the arthritis effected the development of the shoulder condition, the condition was due in part to the characteristics of appellee's employment. Because this testimony contradicts the testimony of Dr. Cohen, a jury question was raised

concerning whether this shoulder impingement syndrome was occupational in character. Thus, the lower court did not err in submitting this case to the jury.

### B.

Finally, appellants rely on *LeCompte v. United Parcel Service, Inc.*, 90 Md.App. 651, 602 A.2d 261 (1992), to support their contention that "[t]he Claimant failed to establish any distinctive employment hazards competent to produce her alleged occupational disease...." Appellants maintain that appellee's job was not repetitive and the activities were not unique to the occupation.

The claimant in *LeCompte* was employed as a "jumper," which required her to jump from a UPS truck and carry packages to homes or businesses. After working only a week, the claimant experienced trouble with her knees. The lower court, in granting a summary judgment motion, determined that the knee problems were the result of a pre-existing condition. Nevertheless, this was not the dispositive factor in the decision that the claimant did not have an occupational disease. The lower court found "that there were no 'distinctive employment hazards in Mrs. LeCompte's employment.' " *Id.* at 658, 602 A.2d 261.

In reaching a decision, this Court discussed *Lettering Unlimited v. Guy*, 321 Md. 305, 311, 582 A.2d 996 (1990), where the Court of Appeals commented favorably on an analysis that concluded with "ordinary or usual job-related repetitive trauma ... might form the basis for an occupational disease claim." (Quoting R. Gilbert & R. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 5.1 (1988)). We opined that "while the lack of 'distinctive' or 'unusual' employment hazards is *not* dispositive of occupational disease in cases of job-related repetitive trauma, the repetitive character of the trauma must be averred." *LeCompte*, 90 Md.App. at 658, 602 A.2d 261 (emphasis added). We concluded that the claimant's condition was not the result of repetitive trauma because it manifested itself after the first week of the job. *Id.*

Appellants contend in a footnote that there was no type of motion or activity involved in the present case that could be characterized as a distinctive employment hazard. In *Le-Compte*, because there was an allegation of a pre-existing condition, the trial court stated that it had to determine whether there was a distinctive employment hazard. On appeal, this Court opined that there must be facts demonstrating *either* repetitive trauma or a distinctive employment hazard. LeCompte had only been employed for one week, and thus the lower court had to address the issue of whether a distinctive hazard existed. In the case at bar, however, there was expert testimony that the shoulder impingement syndrome was not related to the pre-existing condition of appellee. According to Dr. Byank, it was not the result of an extrinsic condition or independent agency, but the direct consequence of the requirements of this occupation. Thus, proof of a distinctive employment hazard is not necessary; appellee must show that the condition was the "expectable result of working under conditions naturally inherent in the employment. . . ." *Foble v. Knefely*, 176 Md. 474, 486, 6 A.2d 48 (1939). Viewing the evidence in the light most favorable to appellee, the evidence supports more than one conclusion. Therefore, it is not a question of law, but a question for the jury. Accordingly, the lower court did not err.[3]

JUDGMENT REVERSED; CASE REMANDED FOR NEW TRIAL; COSTS TO BE PAID BY APPELLEE.

Dissenting opinion by ALPERT, J.

ALPERT, Judge, dissenting.

The majority holds that "the lower court did not err in submitting this case to the jury." I agree. Unfortunately,

---

3. In addition, appellants also argue that appellee's job did not meet the level of repetition required by *LeCompte*. Although we do not base our decision on the repetitive trauma theory, we note that *LeCompte* did not establish the amount of times an activity must be repeated. This Court held there that because the activity was only done for one week, the condition was not the result of repetitive trauma. In the present case, appellee had performed the same activities for over five years.

the majority also holds that it was reversible error "to deny the employer the right to have Sweeney present at the counsel table." In my view, the error, which the trial judge promptly and candidly acknowledged, did not constitute *reversible* error. Therefore, for the two reasons set forth below, I dissent.

### Harmless Error

First, in my view, the error was harmless beyond doubt. The majority relies on *Safeway Stores, Inc., et al. v. Watson,* 317 Md. 178, 562 A.2d 1242 (1989) as their reason for reversal. There, the Court posited two questions concerning the correct interpretation of the sequestration rule:

> 1) what, if any, nexus is required between the 'party that is not a natural person' and the person designated by that party to be its representative, and 2) to what extent, if any, does a trial judge have discretion to disapprove the designation made by the party?

*Id.* at 180, 562 A.2d 1242. The Court then concluded that "a party that is not a natural person has very broad latitude in the selection of a representative when witnesses are excluded, and the exercise of this right is not subject to the discretion of the trial judge." *Id.* at 183, 562 A.2d 1242.

In the instant case, there is no dispute as to whether the trial court erred. The issue is whether the error requires reversal, or whether it was harmless. In establishing that the error was reversible, the majority did not find that the Employer suffered any *actual* prejudice—nor does the record reveal any. Instead, the majority simply stated that the "[a]ppellee [Bobbitt] has failed to overcome the *presumption* of prejudice." 96 Md.App. at 164, 623 A.2d at 1315 (emphasis added).

The existence of such a "presumption," as the majority correctly states, was made apparent in *Watson:* "We conclude that it is appropriate to *presume* prejudice from the wrongful exclusion of a party, or its representative, from a trial." 317 Md. at 184, 562 A.2d 1242. The quoted sentence, however, is immediately followed by the following language:

Experienced trial attorneys and judges understand the importance of 'humanizing' a corporate defendant in a jury trial. Moreover, a party is entitled to be present to have a first hand view of the proceedings for purposes of evaluating the constantly changing prospects or exigencies for settlement, and to participate in tactical decisions that must be made, sometimes quickly, in the course of a trial.

*Id.*

It is obvious that the rationale given in *Watson* for the presumption was unhampered in this case. The Employer was "humanized," and their representative was present and involved in the development of the entire two-and-one-half day trial, less fifteen minutes.[1]

The presumption espoused in *Watson* is, of course, a rebuttable one. In *Watson*, however, unlike the case *sub judice*, the representative was excluded from the *entire* trial—not just fifteen minutes. The question thus raised is whether Sweeney's absence for fifteen minutes of testimony from a two-and-one-half day trial sufficiently prejudiced the Employer. In my view, it didn't; the fifteen minute absence could hardly have influenced the outcome of the litigation. *See Harris v. Harris,* 310 Md. 310, 320, 529 A.2d 356 (1987). Therefore, under the particular circumstances of this case, I believe that any presumption resulting from Sweeney's absence was sufficiently rebutted, and any error resulting from the sequestration harmless.

### *Waiver*

Second, I believe that the Employer's conduct, following Sweeney's return to the courtroom, was in the nature of a waiver. During the course of Bobbitt's direct examination, the trial judge called counsel to the bench and advised them that she was allowing the appellants' designee (*i.e.*, Sweeney) to return to the courtroom. Appellants' counsel responded,

---

1. Appellee argues in her brief that the designated witness was missing for 15 minutes in a 2½ day trial. That allegation of fact was not disputed by appellants in their reply brief.

"Unfortunately, [Bobbitt's] halfway finished with her testimony," whereupon the trial court advised said counsel, "Well, you're going to cross-examine."

At this point, though presented with an adequate opportunity to do so, appellants' counsel requested no further relief. He did not, for example, ask for a recess in order to confer with the Sweeney, who purportedly could assist said counsel in cross-examining Bobbitt[2]. Nor did counsel request a continuance in order to provide Sweeney with an opportunity to review a transcript of the proceedings he missed. In short, the Employer did nothing to preserve its right to complain about its *fifteen-minute* sequestration (as distinct from its *total* sequestration), nor did it attempt to take any actions of record in order to minimize any theoretical prejudice which might have resulted from said sequestration[3].

While appellants are correct that the burden is upon the Bobbitt to establish that the sequestration did not influence the outcome of the litigation, I believe that that is clear beyond doubt and that, therefore, the appellee has met that burden. Consequently, I would affirm the judgment of the trial court.

---

**2.** While it is arguable that Bobbitt's testimony at trial was expansive, it seems clear to me that the able and experienced trial counsel certainly could have—and *would* have—conferred with Sweeney if counsel anticipated any difficulty with Bobbitt's cross-examination.

**3.** Indeed, the fact that the Employer took no such actions of record appears, under the circumstances of this case, to support the inference that the Employer suffered *no* prejudice at all. In this regard, we note that, due to the particular "appellate" posture of this case (*i.e.*, this case had been previously tried before the Commission), appellants' counsel—*prior to trial*—had the opportunity to review with the designee the testimony previously given by Bobbitt.