*In the Matter of City of Hagerstown, et al.*, No. 2114, Sept. Term 2023.  Opinion by Arthur, J.

**WORKERS' COMPENSATION—DE NOVO JUDICIAL REVIEW**

At a de novo trial for judicial review of a decision by the Workers' Compensation Commission, the jury reviews the "decision" of the Commission, rather than the opinion or findings of the Commission.  A "decision" of the Commission is an operative order with the effect of granting or denying some benefit under the Act.  If the jury concludes that the decision was correct, the jury should uphold the decision even if the jury disagrees with factual findings made by the Commission.  Questions of fact submitted to the jury should, to the extent practicable, be confined to ultimate issues, such as whether the employee suffered an accidental injury arising out of and in the course of employment and whether the employee suffered a disability as a result of the accidental injury.

In this case, an employer petitioned for judicial review of a decision awarding disability benefits.  While the action was pending, the employee's physician provided a diagnosis that was different from the condition mentioned in the Commission's opinion.  At trial, the employer contended that the jury should be required to decide whether the employee had the specific medical condition mentioned in the Commission's opinion.  The employer also contended that it was entitled to judgment in its favor because there was no evidence that the employee suffered from the specific condition mentioned in the Commission's opinion.  The trial court correctly rejected these arguments.  The trial court correctly determined that the proper question for the jury to decide was whether the employee had sustained an accidental injury arising out of and in the course of his employment, not whether the Commission had identified the correct medical diagnosis.

**WORKERS' COMPENSATION—OCCUPATIONAL DISEASE**

In an action for judicial review of a decision of the Workers' Compensation Commission which awards benefits based solely on an accidental injury, where the employee makes no claim based on an occupational disease, the trial court is not required to provide jury instructions about the requirements for proving an occupational disease.

**DISCOVERY—SANCTIONS FOR DISCOVERY VIOLATION**

At a de novo trial for review of a workers' compensation award, the trial court did not abuse its discretion by permitting the employee to introduce certain photographs that he had previously obtained from the employer.  The record established that the employer was aware of the existence of the photographs, as well as the content of the photographs.  The record further indicated that the employer had adequate notice that the employee possessed the photographs.  Although the employee failed to mention the photographs in his written discovery responses, any resulting prejudice to the employer was minimal.

Circuit Court for Washington County
Case No. C-21-CV-23-000062

IN THE MATTER OF
CITY OF HAGERSTOWN, ET AL.


_____


Arthur,
Tang,
Harrell, Glenn T.
 (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Arthur, J.
_____

Filed: May 30, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal concerns a decision by the Workers' Compensation Commission awarding temporary total disability benefits. The employee claimed that he developed respiratory problems after he encountered mold while performing building repairs. The Commission determined that the employee sustained an accidental injury arising out of and in the course of his employment and ordered the employer to pay temporary total disability benefits. Throughout the opinion explaining its decision, the Commission described the employee's respiratory condition as an "airways disease" and, at one point, as "pulmonary airways disease."

The employer petitioned for judicial review in the Circuit Court for Washington County. While the judicial review action was pending, the employee underwent a lung biopsy to investigate his condition. Based on the results of the biopsy, his treating physician provided a new diagnosis: hypersensitivity pneumonitis. The physician continued to conclude that the disease resulted from exposure to mold.

At a de novo jury trial, all medical experts agreed that the primary diagnosis for the employee's condition is hypersensitivity pneumonitis, which, they explained, is distinct from a diagnosis of "pulmonary airways disease." The employer argued that it was entitled to judgment in its favor because there was no evidence that the employee suffered from the "pulmonary airways disease" mentioned in the Commission's decision. The court rejected the employer's argument. The court concluded that the issue for the jury to decide was whether the employee sustained a compensable injury, not whether the Commission had identified the correct medical diagnosis.

Based on the evidence presented at trial, the jury found that the employee

sustained an accidental injury arising out of and in the course of the employment and that he was temporarily and totally disabled as a result of his injury. The employer has appealed, contending that it is entitled to judgment in its favor or a new trial. Because we reject the employer's contentions, we will affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2018, Paul Johnson began working for the City of Hagerstown as a building maintenance specialist. For many years before his employment with the City, Mr. Johnson had an extensive history of breathing or respiratory complaints, including sinus congestion and seasonal allergies. According to Mr. Johnson, these complaints were minor complaints, which generally did not prevent him from performing his job duties.

Around the fall of 2021, Mr. Johnson's supervisors assigned him to perform renovations at an office building known as "The Barn" in Hagerstown. The project required Mr. Johnson to repair and replace water-damaged walls on the basement level of the building. After removing desks and printers from some offices, Mr. Johnson observed visible mold on the walls.

In late 2021 or early 2022, Mr. Johnson encountered a large area of black mold while repairing walls in a room known as the map room. According to Mr. Johnson, the room had a "really nasty" odor, resembling the smell of a "dead body[.]" After his exposure to the odor, Mr. Johnson experienced fatigue, dizziness, coughing, wheezing, and difficulty breathing. When Mr. Johnson sought treatment for his respiratory symptoms, his physicians advised him not to return to work. Mr. Johnson stopped

2

working in early February 2022 and did not return.  Mr. Johnson was 52 years old at that time.

Around the same time that Mr. Johnson stopped working, a contractor inspected the Barn building at the request of the City.  The contractor took photographs of areas of suspected mold in the basement level.  Sampling tests confirmed the presence of mold, including mold on the walls of the map room.

On March 23, 2022, Mr. Johnson filed a claim with the Workers' Compensation Commission.  Mr. Johnson claimed that he sustained an accidental injury on January 27, 2022.[1]  Mr. Johnson described the injury as "asthma" and "respiratory issues."  Mr. Johnson wrote that he "develope[d] breathing problems" after he encountered "large colonies of different types of mold" while performing his job duties.

In response to the claim, the City of Hagerstown, as a self-insured employer, raised two issues with the Commission.  The City contested whether Mr. Johnson sustained an accidental injury or occupational disease arising out of and in the course of his employment.  The City further contested whether Mr. Johnson's disability resulted from an accidental injury or occupational disease arising out of and in the course of his employment.

Beginning in May 2022, Mr. Johnson began receiving treatment from Stella Hines, M.D., an occupational and environmental pulmonologist.  After the initial examination,

---

[1] The date of January 27, 2022, appears to be an approximation of Mr. Johnson's last mold exposure.  Under the Workers' Compensation Act, an injury need not occur "suddenly, [or] at an identifiable point in time, to be considered accidental." *Luby Chevrolet, Inc. v. Gerst*, 112 Md. App. 177, 190 (1996).

Dr. Hines concluded that the most likely explanations for Mr. Johnson's symptoms were work-related asthma and reactive airways disease.

In advance of a Commission hearing, Mr. Johnson underwent an examination with John Parkerson, M.D., a specialist in occupational medicine. Dr. Parkerson noted that Mr. Johnson "d[id] not have a firm diagnosis" at that time. Dr. Parkerson concluded that mold exposure had exacerbated Mr. Johnson's preexisting respiratory problems and that his respiratory condition was "partially related" to the mold exposure.

At a hearing on October 4, 2022, the Commission considered evidence, including reports from Dr. Hines and Dr. Parkerson. Afterwards, the Commission issued a decision awarding temporary total disability benefits to Mr. Johnson.

Throughout the opinion explaining its decision, the Commission described Mr. Johnson's condition as an "airways disease." The Commission concluded that this condition did not fit the definition of an occupational disease. The Commission determined that Mr. Johnson sustained an accidental injury arising out of and in the course of employment on January 27, 2022. The Commission also determined that Mr. Johnson was temporarily totally disabled since the day following his injury and ordered the City to pay temporary total disability benefits continuously since that date. The Commission further ordered the City to authorize continued treatment with Dr. Hines.

The City moved for rehearing, asking the Commission to reconsider its determination that Mr. Johnson sustained an accidental injury. The Commission granted the request for rehearing. After a hearing on January 19, 2023, the Commission issued a new award of compensation, superseding the prior award. The Commission again

4

ordered the City to pay temporary total disability benefits accruing continuously since the day after the claimed injury.

The opinion explaining the Commission's new decision was substantially similar to the opinion explaining the earlier decision. Throughout the opinion, the Commission described Mr. Johnson's respiratory condition as an "airways disease" caused by his exposure to mold. The Commission found that Mr. Johnson did not sustain an occupational disease within the meaning of the Workers' Compensation Act. The Commission reasoned that "[t]he nature of [Mr. Johnson's] employment – meaning his occupation – does not generally expose workers in that occupation to the hazards of the airways disease which developed." The Commission stated that "[Mr. Johnson's] airways disease was caused by a particular condition which developed at a particular job site (mold growth at 'The Barn')."

The Commission "f[ound] that [Mr. Johnson] did sustain an accidental injury arising out of and in the course of employment on or about January 27, 2022." The Commission "also f[ound] that [Mr. Johnson's] pulmonary airways disease was caused, in part, by exposure to mold which arose out of and in the course of [his] employment with [the City]." The Commission stated: "The exposure to mold led to an exacerbation or triggering of an underlying and pre-existing airways disease." The Commission added: "The exposure which produced the injury occurred over a period of time (ending on approximately January 27, 2022) but still constitutes an accidental personal injury." The Commission ordered the City to pay temporary total disability benefits accruing continuously since January 28, 2022. Finally, the Commission ordered the City to

5

authorize continued treatment with Dr. Hines.

The City petitioned for judicial review in the Circuit Court for Washington County, challenging the award of temporary total disability benefits. The City requested a jury trial on the issues raised in its petition. Along with his response to the petition, Mr. Johnson also requested a jury trial on all issues.

Throughout 2022 and early 2023, Dr. Hines remained uncertain as to the exact diagnosis for Mr. Johnson's condition, despite pulmonary function tests, a lymph node biopsy, imaging studies, and blood work. Dr. Hines considered a diagnosis of hypersensitivity pneumonitis, but she concluded that the diagnosis was relatively unlikely based on the imaging results. Generally, Dr. Hines continued to conclude that work-related asthma was the most likely explanation for Mr. Johnson's continuing symptoms.

In March 2023, Mr. Johnson underwent a surgical lung biopsy, an invasive procedure in which a surgeon removed tissue from his lungs. Based on the results of that biopsy, Dr. Hines concluded that the primary diagnosis for Mr. Johnson's condition was hypersensitivity pneumonitis.

In October 2023, the circuit court conducted a de novo jury trial concerning the City's petition for judicial review of the Commission's decision awarding temporary total disability benefits.

At trial, the City presented evidence concerning Mr. Johnson's medical history prior to the claimed injury. In his testimony, Mr. Johnson admitted that he formerly smoked cigarettes. Mr. Johnson estimated that he smoked between half a pack to two packs of cigarettes per day for about 25 years, from 1989 to 2014. Since the late 1990s

6

and continuing through the time of his employment with the City, Mr. Johnson had an extensive history of breathing or respiratory complaints, including seasonal allergies, sinus congestion, chest congestion, shortness of breath, coughing, and wheezing. Mr. Johnson also had surgery to repair a deviated nasal septum in 2016.

The City presented testimony from Hung Cheung, M.D., who testified as an expert in the field of occupational and environmental medicine. Dr. Cheung had reviewed Mr. Johnson's medical records, including the series of reports by Dr. Hines. Dr. Cheung agreed with Dr. Hines that there is a "fairly high probability" that Mr. Johnson has hypersensitivity pneumonitis.

Dr. Cheung nevertheless opined that Mr. Johnson's respiratory symptoms were not caused by the alleged mold exposure at the Barn building. As the basis for that conclusion, Dr. Cheung relied on Mr. Johnson's history of respiratory problems predating the alleged mold exposure. Dr. Cheung also relied on the results of environmental mold sampling conducted in February 2022 which, according to Dr. Cheung, did not indicate "mold amplification" in the areas tested. Dr. Cheung further opined that Mr. Johnson was capable of working in a "modified capacity," performing work with a "medium physical demand level[.]"

In his testimony, Dr. Cheung stated that hypersensitivity pneumonitis typically results from "initial overwhelming exposures to organic matters[.]" Dr. Cheung described hypersensitivity pneumonitis as a condition characterized by "inflammation in the . . . interstitium or the connective tissue within . . . the lungs[,]" which "may, depending on the amount of inflammation or subsequent scarring, cause oxygen to not

7

flow into the body."

During direct examination, the City asked Dr. Cheung to explain the difference between hypersensitivity pneumonitis and "pulmonary airways disease[,]" the condition mentioned in the Commission's decision. Dr. Cheung stated: "airways disease is really conditions related to the airways which results in conditions or diagnosis such as asthma, emphysema, bronchitis, and things as such." Dr. Cheung stated that people with an airways disease "have a difficulty in moving air[,]" but, for people with "[hypersensitivity pneumonitis] or interstitial lung disease, the problem is not moving air." Dr. Cheung continued: "The air may come in, and you may have all of the oxygen that you can, but the oxygen is having difficulty crossing the connective tissue into the bloodstream[.]" Dr. Cheung opined, based on the results of Mr. Johnson's lung biopsy, that he "does not have airways disease." Dr. Cheung concluded that "the biopsy really indicates a diagnosis more consistent with hypersensitivity pneumonitis which is an interstitial lung disease, not airways disease."

The City presented testimony from Dr. John Parkerson, who testified as an expert in the field of occupational and environmental medicine. Dr. Parkerson explained that, when he initially evaluated Mr. Johnson in September 2022, Mr. Johnson did not have any "firm diagnosis" for his condition. Since that time, Dr. Parkerson had reviewed updated medical records, including reports made by Dr. Hines and Dr. Cheung after the lung biopsy. Dr. Parkerson agreed with the diagnosis of hypersensitivity pneumonitis.

Dr. Parkerson opined that Mr. Johnson's condition was not caused by mold exposure at the Barn building. As the basis for that conclusion, Dr. Parkerson relied on

8

Mr. Johnson's preexisting respiratory complaints, tests measuring his reactivity to molds, and environmental sampling of the mold at his workplace. Dr. Parkerson further opined that Mr. Johnson's respiratory condition would not preclude him from working "full-time . . . in some capacity," performing either "sedentary" or "medium duty" work.

In his testimony, Dr. Parkerson explained that hypersensitivity pneumonitis and "pulmonary airways disease" are "distinct" conditions. Dr. Parkerson stated that "the symptoms may overlap, but medically the tests show different results and the treatment is different." Dr. Parkerson explained: "Pulmonary airways disease is what people think of as asthma, COPD, emphysema. And [hypersensitivity pneumonitis] is what falls in the realm of what we call restrictive diseases, not obstructive diseases." Dr. Parkerson opined that Mr. Johnson's medical records "do not support" a diagnosis of pulmonary airways disease.

At the close of the City's case, counsel for Mr. Johnson moved to remand the proceedings to the Workers' Compensation Commission. Counsel argued that the court should direct the Commission to consider the new medical evidence generated after the Commission hearing in January 2023. He argued that the Commission should decide, in the first instance, whether Mr. Johnson has hypersensitivity pneumonitis as a result of his mold exposure.

The City opposed the motion for remand. The City argued that, under the circumstances, the only way for Mr. Johnson to pursue his claim for temporary total disability benefits was to "dismiss [his] claim completely and refile a brand-new claim[.]" The City further asserted that, at the time of trial, Mr. Johnson still had "a

9

couple of months" left under the relevant statute of limitations in which to "file a new claim for [hypersensitivity pneumonitis]."[2] The court reserved its ruling on the motion for remand until the close of all evidence.

In his case in chief, Mr. Johnson presented testimony from Dr. Stella Hines, who testified as an expert "in the field of pulmonary and occupational exposure cases." Dr. Hines explained that she eventually arrived at the diagnosis of hypersensitivity pneumonitis after the surgical lung biopsy in March 2023. Dr. Hines described hypersensitivity pneumonitis as "a chronic lung condition that can result from being around and breathing in different . . . antigens[,]" which may "cause inflammation in the lungs." Dr. Hines explained that "molds are . . . one of the commonly known causes of hypersensitivity pneumonitis." Dr. Hines testified that chronic hypersensitivity pneumonitis can lead to an interstitial lung disease, in which inflammation can make it "more difficult" for the lungs to "inflate and deflate" or "make it harder for [patients] to exchange oxygen into their lungs from what they're taking in from the air." Dr. Hines mentioned that "patients can also develop wheezing," usually as the result of "some narrowing of the really small airways that result in some air trapping as a result of the inflammation."

Dr. Hines concluded that there was no indication in Mr. Johnson's medical history

---

[2] Generally, the Commission does not require employees to provide a specific medical diagnosis when filing or amending a claim. Rather, the claim must include information about the "date of the accident or occupational disease[,]" the "member of the body that was injured[,]" and a "description of how the accidental injury or occupational disease occurred[.]" Code of Maryland Regulations (COMAR) 14.09.02.02(A)(2).

that the "degree of symptoms" for which he sought treatment in 2022 had existed "prior to that time." Dr. Hines opined, to a reasonable degree of medical certainty, that Mr. Johnson developed hypersensitivity pneumonitis as a result of his exposure to mold at his work environment. As the basis for that conclusion, Dr. Hines relied on the timing of his symptoms, the presence of mold in inspections of his work environment, and the absence of another source that might have produced his condition.

Dr. Hines opined that Mr. Johnson's respiratory symptoms, including fatigue and coughing spasms, limit his ability to perform heavy or prolonged physical labor and make it unsafe for him to work in a "safety-sensitive" job. Dr. Hines testified that Mr. Johnson had not yet reached maximum medical improvement, as there was still a chance that his condition might improve over time with treatment. Dr. Hines nevertheless opined that it was likely that Mr. Johnson would continue to have "a chronic lung deficit" resulting from his disease.

During cross-examination, Dr. Hines acknowledged that she remained uncertain as to Mr. Johnson's exact diagnosis from the time of the initial examination in May 2022 through the time of the lung biopsy in March 2023. Dr. Hines stated that, throughout that time, she believed that work-related asthma was the most likely diagnosis. Dr. Hines agreed that the diagnosis of hypersensitivity pneumonitis is "distinct" and "different" from the diagnosis of work-related asthma. Dr. Hines also agreed that hypersensitivity pneumonitis is "distinct from . . . something called pulmonary airways disease." Dr. Hines mentioned, however, that a person "can have airways disease as a part of hypersensitivity pneumonitis."

11

During redirect examination, counsel for Mr. Johnson asked Dr. Hines whether hypersensitivity pneumonitis is a "subcategory" of an "overall broad diagnosis" of "restrictive airways disease." Dr. Hines responded: "Yes. I mean, I think I'd say it more so people have restrictive airways disease as a manifestation of their hypersensitivity pneumonitis." Counsel further asked: "So, . . . hypersensitivity is a restrictive airway disease case, but just because you have restrictive airways disease, doesn't mean you have [hypersensitivity pneumonitis], correct?" Dr. Hines answered: "Correct." Finally, counsel asked Dr. Hines for her opinion "as to whether or not the restrictive airways disease [was] a derivative or exacerbated by his exposure to irritants at work during the time frame that were talking about[.]" Dr. Hines answered: "I think it's related."

At the close of all evidence, the City moved for judgment in its favor. The City argued that the jury should be required to decide the "very specific" question of whether Mr. Johnson had "an accidental injury of pulmonary airways disease[.]" The City argued that none of the evidence supported a finding that Mr. Johnson had "pulmonary airways disease[,]" because all medical experts agreed that he has "a completely different condition called . . . hypersensitivity pneumonitis." The City asserted that the medical experts, including Dr. Hines, agreed that the diagnosis of hypersensitivity pneumonitis was "distinct" from the diagnosis of pulmonary airways disease.

The court expressed skepticism about the City's interpretation of the Commission's findings. The court noted that, in the opinion explaining its decision, the Commission mentioned an "airways disease" five times but used the term "pulmonary airways disease" only once. The court observed that the commissioner, who was "a

12

layman interpreting the evidence in front of him[,]" may have used the term "airways disease" as "a generalized term" for Mr. Johnson's respiratory condition, without making a finding about one particular medical diagnosis to the exclusion of others.

In response to the City's motion, counsel for Mr. Johnson renewed his motion to remand the proceedings to the Commission to allow the Commission to consider the new medical evidence. In the alternative, counsel argued that the court should deny the City's motion for judgment because Dr. Hines had testified that hypersensitivity pneumonitis is "a subcategory of restrictive airways disease."

The court denied Mr. Johnson's motion to remand the case to the Commission. The court concluded that section 9-745(d) of the Labor and Employment Article, the statute that authorizes a party to submit to a jury any question of fact involved in a decision of the Commission, does not authorize the court to remand the case to the Commission.

The court denied the City's motion for judgment. The court reasoned that, in the judicial review action, the jury's role was to review the "decision" of the Commission, not necessarily the factual findings supporting that decision. The court reasoned: "The decision is not a decision that the claimant suffered necessarily from pulmonary airways disease or an airways disease[.]" The court reasoned that the decisions under review in a de novo trial are decisions on issues such as "[d]id the employee sustain an accidental personal injury arising out of and in the course of employment" or "is the disability of the employee the result of an accidental personal injury arising out of and in the course of employment[.]"

13

During discussions about the verdict sheet, the City asked the court to submit the question of whether Mr. Johnson sustained an "accidental injury of pulmonary airways disease[.]"  The City argued that it would be "prejudicial error" for the court not to submit "that specific question" to the jury.  Consistent with its ruling on the motion for judgment, the court denied the City's request.  The court ruled that the proper question for the jury to decide was whether Mr. Johnson sustained an accidental personal injury arising out of and in the course of employment on January 27, 2022.[3]

The jury delivered a verdict in favor of Mr. Johnson on two questions listed on the verdict sheet.  The first question was: "Did the claimant sustain an accidental injury, personal injury [sic] arising out of and in the course of employment on January 27th, 2022?"  The jury answered yes to this question.

The second question was: "Was the claimant temporarily totally disabled from January 28th, 2022 to the present?  Or was that temporary total disability, if any, for a different period of time between January 28th, 2022 and the present?  Or was the claimant not temporarily disabled?"  In response, the jury found that Mr. Johnson "was temporarily totally disabled from January 28th, 2022 to the present."

Ten days after the jury rendered its verdict, the City filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.  In support of its motion,

---

[3] Despite the circuit court's rulings about the proper question for the jury, the City devoted most of its closing argument to arguing that the actual question for the jury to decide was whether Mr. Johnson had pulmonary airways disease.  Without objection, counsel for the City repeatedly told the jurors that they should decide whether Mr. Johnson had pulmonary airways disease and asserted that, if their answer to that question was no, they should find no compensable injury.

the City argued that the evidence at trial was insufficient to support a finding that Mr. Johnson had pulmonary airways disease. The City also argued that the verdict sheet was erroneous because it did not ask whether Mr. Johnson had pulmonary airways disease.

On December 15, 2023, the circuit court denied the City's post-judgment motion. One week later, the City filed a notice of appeal. Subsequently, the circuit court entered judgment incorporating the jury verdict and affirming the decision of the Commission.[4]

## DISCUSSION

In this appeal, the City of Hagerstown[5] asks this Court to reverse the judgment affirming the decision of the Workers' Compensation Commission and to remand the case to the circuit court for a new trial. The City's appellate brief presents the following questions:

> 1. Did the trial court err by allowing the jury to decide a complicated medical question without evidence legally sufficient to support the decision of the Commission?
>
> 2. Did the trial court err in [s]ubmitting the Verdict Sheet to the Jury that withheld a fundamental portion of the decision of the Commission which has the effect of granting or denying benefits, specifically if the disability of the employee was the result of an accidental personal injury arising out of and in the course of employment?
>
> 3. Did the trial court err in disallowing a proposed Jury Instruction by the Appellants addressing causal relationship of the Claimant's injuries and the

---

[4] The circuit court did not enter the document embodying its judgment until October 17, 2024. Under Md. Rule 8-602(f), the City's notice of appeal is "treated as filed on the same day as, but after," the entry of judgment.

[5] There are two appellants in this case: the City of Hagerstown, as an employer, and the City of Hagerstown, as a self-insurer. This opinion refers to those parties collectively as "the City."

15

effect of pre-existing medical conditions?

4. Did the trial court err in allowing photographic evidence to be presented to the jury after Claimant failed to disclose their intention to introduce such photographs during discovery?

As discussed below, we conclude that the City has failed to show any error or abuse of discretion in the circuit court's rulings. Accordingly, the judgment will be affirmed.

## I.      Sufficiency of the Evidence

In this appeal, the City contends that the circuit court erred when it allowed the jury to decide whether Mr. Johnson was temporarily and totally disabled as the result of an accidental injury arising out of and in the course of his employment. The City contends that the court should have granted the City's motion for judgment or its motion for judgment notwithstanding the verdict on that question.

Motions for judgment under Md. Rule 2-519 and motions for judgment notwithstanding the verdict under Md. Rule 2-532 test the sufficiency of the evidence at trial. *See Elste v. ISG Sparrows Point, LLC*, 188 Md. App. 634, 647-48 (2009). The moving party is entitled to judgment in its favor "'when the evidence at the close of the case, taken in the light most favorable to the nonmoving party, does not legally support the nonmoving party's claim or defense.'" *Id.* at 648 (quoting *Giant Food, Inc. v. Booker*, 152 Md. App. 166, 177 (2003)). When assessing the sufficiency of the evidence, the court must resolve all conflicts in the evidence in favor of the nonmoving party and assume the truth of all evidence and all reasonable inferences tending to support the position of the nonmoving party. *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 349

16

(2013). Ordinarily, "'where there is *any* evidence from which a rational conclusion may be drawn, . . . the trial court must leave to the jury all considerations as to the weight and value of such evidence.'" *Baltimore County v. Kelly*, 391 Md. 64, 80 (2006) (emphasis in original) (quoting *Jewel Tea Co. v. Blamble*, 227 Md. 1, 4 (1961)). On appeal, this Court reviews the denial of a motion for judgment or motion for judgment notwithstanding the verdict to determine whether the decision was legally correct. *See Scapa Dryer Fabrics, Inc. v. Saville*, 418 Md. 496, 503 (2011).

In the present case, it is beyond dispute that the evidence was sufficient for the jury to conclude that Mr. Johnson was temporarily and totally disabled as the result of an accidental injury arising out of and in the course of his employment. Two sources of evidence independently supported that conclusion: (1) the decision of the Workers' Compensation Commission dated January 30, 2023, based on the determination that Mr. Johnson was temporarily and totally disabled as a result of an accidental injury; and (2) the expert testimony of Dr. Hines, who opined that Mr. Johnson had a disabling respiratory condition as a result of his work environment.

The Maryland Workers' Compensation Act provides that a party "aggrieved by a decision of the Commission . . . may appeal from the decision of the Commission" by filing a petition for judicial review in the circuit court. Md. Code (1991, 2016 Repl. Vol., 2020 Supp.), § 9-737 of the Labor & Employment Article ("Lab. & Empl."). In the judicial review proceeding, "(1) the decision of the Commission is presumed to be prima facie correct; and (2) the party challenging the decision has the burden of proof." Lab. & Empl. § 9-745(b). On motion of any party to the action, "the court shall submit to a jury

17

any question of fact involved in the case." Lab. & Empl. § 9-745(d).

Courts frequently describe this type of judicial review proceeding, in which a jury decides factual questions involved in the Commission's decision, as "an 'essentially' *de novo* trial." *Baltimore County v. Kelly*, 391 Md. at 74 (quoting *Richardson v. Home Mut. Life Ins. Co.*, 235 Md. 252, 255 (1964)). This type of trial is not "[a] true trial *de novo*, . . . [which] would put all parties back at 'square one,' . . . as if the adjudication appealed from had never occurred." *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. 155, 189 (2005). At trial, the Commission's decision "may be offered as substantive evidence before the *de novo* fact finder" and "may be the subject of a jury instruction[.]" *Id.* The decision may serve as "proof of the very proposition . . . decided by the Commission." *Id.* at 192.

In its brief, the City asserts that, as the claimant, Mr. Johnson had the burden of proving that his alleged work injury caused his alleged disability. The City further argues that, to satisfy that purported burden, Mr. Johnson needed to produce expert medical testimony about the causal connection between his disability and his injury. The City is mistaken. The City fails to recognize that the burden of proof rests with the party challenging the Commission's presumptively correct decision.

In proceedings before the Workers' Compensation Commission, the claimant bears the burden to show that the claimant is entitled to benefits. *See S.B. Thomas, Inc. v. Thompson*, 114 Md. App. 357, 363 (1997). Thus, in the underlying proceedings "[b]efore the Commission," Mr. Johnson had "the burden of showing that the disability claimed [wa]s causally related to the accidental injury." *Pro-Football, Inc. v. Tupa*, 197

18

Md. App. 463, 486 (2011), *aff'd*, 428 Md. 198 (2012). In this case, the Commission previously determined that Mr. Johnson had satisfied that burden. The City subsequently petitioned for judicial review, and both parties moved for a jury trial. "At the circuit court trial, the Commission's decision [wa]s presumed correct" and, therefore, the City had "the burden of proving by a preponderance of the evidence" that the decision was incorrect. *Id.*

When an employer or insurer seeks judicial review after the claimant prevails in the proceedings in the Commission, "'the allocation of burdens switches.'" *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 196 (quoting *Gen. Motors Corp. v. Bark*, 79 Md. App. 68, 80 (1989)); *accord Baltimore County v. Kelly*, 391 Md. at 75-76. "In such a case, the decision of the Commission is, *ipso facto*, the claimant's *prima facie* case and the claimant runs no risk of suffering a directed verdict from the insufficiency of [the claimant's] evidence before the circuit court." *Gen. Motors Corp. v. Bark*, 79 Md. App. at 80; *accord Calvo v. Montgomery County*, 459 Md. 315, 325 (2018) (stating that "[a] successful claimant has no burden of production in judicial review—the Commission's decision may serve as the claimant's *prima facie* case"). At the de novo trial, the previously successful claimant is "not required to prove anything[.]" *S.B. Thomas, Inc. v. Thompson*, 114 Md. App. at 369. The claimant may "offer[] nothing" and "simply rel[y]" on an argument that the employer or insurer failed "to rebut the presumption of correctness of the Commission's earlier ruling." *Id*.

As a logical consequence of this reallocation of burdens, a claimant who previously prevailed in the Commission "cannot suffer a summary judgment (or, perhaps,

19

a directed verdict at the end of the plaintiff's case) against it on the ground that it failed to produce a prima facie case." *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 197. "The party that prevailed before the Commission" has "no burden of either production or persuasion." *Id.* at 198. "That prevailing party, by definition, cannot have failed to satisfy a burden of production because that party had no burden of production." *Id.* Even if that party did have some burden of production, "the substantive evidence of the presumptively correct decision of the Commission would . . . satisfy that burden." *Id.*

"[A]t the circuit court level, any insufficiency in the evidence will work against" the party challenging the Commission's decision "and not against the party enjoying the presumption that the Commission's decision was correct." *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 200 (citing *Weston-Dodson Co. v. Carl*, 156 Md. 535, 540 (1929)). In the present case, therefore, *Mr. Johnson* might have been entitled to judgment in his favor if the City had failed to produce sufficient evidence to overcome the presumption of correctness of the Commission's decision. For instance, Mr. Johnson might have been entitled to judgment in his favor if the City had failed to produce expert opinion testimony to the effect that his disability was *not* causally related to his work-related injury (or to the effect that he was not totally disabled as a result of his work-related injury). *See S.B. Thomas, Inc. v. Thompson*, 114 Md. App. at 367-68. The City, however, could not be entitled to judgment on the ground that Mr. Johnson had failed to meet any burden of production, where he had no such burden.[6]

---

[6] This Court has recognized only a few narrow circumstances in which a trial court might properly grant a motion for judgment against the party who previously prevailed

20

Yet even without the presumption of correctness of the Commission's decision, the evidence presented at trial was sufficient for the jury to find that Mr. Johnson was temporarily and totally disabled as a result of an accidental injury arising out of and in the course of his employment. At trial, Mr. Johnson testified that he experienced debilitating respiratory symptoms shortly after his exposure to mold while working in rooms on the basement level of the Barn office building around January 27, 2022. Environmental sampling confirmed the presence of mold inside those same rooms. Dr. Hines, an occupational and environmental pulmonologist, treated Mr. Johnson from March 2022 through the time of her testimony. Dr. Hines opined, to a reasonable degree of medical certainty, that Mr. Johnson developed hypersensitivity pneumonitis as a result of his exposure to mold in his work environment. Dr. Hines also opined that Mr. Johnson's respiratory symptoms substantially limit his ability to perform physical labor. Although the City presented testimony from experts who disputed whether the exposure to mold caused Mr. Johnson's condition, and further disputed whether he was totally incapable of working in a limited capacity, the jury was not required to credit those expert opinions over the opinion of Dr. Hines.

---

before the Commission at the close of all of the evidence. *See Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 203 n.9 (recognizing that a development in the course of trial might cause an initially uncomplicated question of causation "to escalate into a medically complicated question" and that "an incremental burden of producing an expert medical witness might accrue and might attach to either party or both"); *Smith v. Howard County*, 177 Md. App. 327, 339 (2007) (holding that circuit court was permitted to grant judgment against the party that prevailed before the Commission, where the Commission made its decision without any evidence and therefore the decision was not entitled to the presumption of correctness).

In this appeal, the City makes no argument that the evidence was insufficient to support a finding that Mr. Johnson was temporarily and totally disabled as a result of an accidental injury arising out of and in the course of his employment. Rather, the City attempts to restrict the sufficiency analysis to a much narrower factual issue.

In its brief, the City asserts that the Commission, "by decision dated January 30, 2023, . . . found that [Mr. Johnson] did sustain an accidental injury arising out of and in the course of employment on January 27, 2022, and that [Mr. Johnson's] *disability, specifically pulmonary airways disease*, was caused by, in part, exposure to mold which arose out of and in the course of employment." (Emphasis in original.) The City argues that "the issue of causal relationship between [Mr. Johnson's] alleged accidental injury and his **alleged disability of pulmonary airways disease**" is a complicated medical question and, therefore, that Mr. Johnson needed to present expert medical opinion testimony on that issue. (Emphasis in original.) The City asserts that, at trial, Dr. Hines testified that "her opinion as to [Mr. Johnson's] disability/diagnosis of pulmonary airways disease had changed" to hypersensitivity pneumonitis two months after the Commission issued its decision. The City further asserts that Dr. Hines testified that "hypersensitivity pneumonitis is a distinct diagnosis from pulmonary airways disease, which was determined to be the *disability* of [Mr. Johnson] at the Commission[.]" (Emphasis in original.) Based on those assertions, the City argues that Mr. Johnson "failed to present sufficient evidence to support the January 30, 2023 Commission decision[.]"

The City's argument is flawed in many respects. Despite the City's repeated

22

assertions, the Commission did not determine that Mr. Johnson's "disability" is "pulmonary airways disease." Throughout its opinion, the Commission described Mr. Johnson's condition as an "airways disease" and, at one point, described it as "pulmonary airways disease." The Commission further found that his disease was caused in part by exposure to mold in his work environment and determined that he was entitled to temporary total disability benefits. Correctly understood, the opinion expressed the conclusion that Mr. Johnson experienced a period of temporary total disability *as a result* of the disease. The Commission did not assign any particular label or labels to a "disability," nor was the Commission required to do so.[7]

The more fundamental flaw in the City's argument, however, is that the City fails to appreciate the difference between the Commission's decision and the factual findings underlying that decision. When a party petitions for judicial review of "the decision of the Commission" under section 9-737 of the Labor & Employment Article, "the decision of the Commission" is presumptively correct and "the party challenging the decision" has the burden of proof. Lab. & Empl. § 9-745(b). As used in the Act, the term "'decision of the Commission[]' . . . is a term of art that has a very precise and limited meaning." *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 221. This term "does not

---

[7] It may be correct to say that the Commission described the *injury* as an "airways disease" (or "pulmonary airways disease"). Generally, the term "'[a]ccidental personal injury'" includes "a disease or infection that naturally results from an accidental injury that arises out of and in the course of employment[.]" Lab. & Empl. § 9-101(b)(3). It is incorrect, however, to equate the accidental injury with the disability resulting from that injury. For example, if Mr. Johnson became disabled because of complications from the treatment of his respiratory condition, the resulting disability would be compensable. *See Suburban Hosp., Inc. v. Kirson*, 362 Md. 140, 157-59 (2000).

embrace every subordinate, intermediate, or subsumed thought process that may have entered into the decisional equation." *Id.*

Maryland courts have "distinguished intermediate findings from the Commission's actual decision." *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 222. "A decision of the Commission which an aggrieved party is entitled to have reviewed by a court must be an operative order which has the effect of granting or denying some benefit" under the Act. *Flying "A" Serv. Station v. Jordan*, 17 Md. App. 477, 480-81 (1973). "Most often, such a decision is reached by giving effect to multiple findings, but it is the ultimate decision or order, not each individual finding, which is the basis for judicial review." *Id.* at 481. An "appeal" authorized by the Act "is not from the findings or opinion of the [C]ommission but from its 'decision.'" *Liggett & Meyers Tobacco Co. v. Goslin*, 163 Md. 74, 78 (1932). "'If, upon an appeal from [the Commission's] decision, it should appear that [the decision] was right and proper, [the decision] should be affirmed, even though it also appear[s] that the findings of the [C]ommission were erroneous.'" *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 222 (quoting *Liggett & Meyers Tobacco Co. v. Goslin*, 163 Md. at 78).

"At the *de novo* trial, the propriety of the Commission's original fact-finding is a matter of no consequence." *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 173. "At trial, the parties may rely on the same or different evidence than was presented to the Commission." *Applied Indus. Techs. v. Ludemann*, 148 Md. App. 272, 282 (2002) (citing *Gen. Motors Corp. v. Bark*, 79 Md. App. at 81); *see also Stine v. Montgomery County*, 237 Md. App. 374, 382 (2018) (explaining that, at a de novo jury

24

trial, parties "may introduce new evidence in the circuit court so long as it relates to 'a factual issue that was actually decided by the Commission[]'") (quoting *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 177); *Kelly Catering, Inc. v. Holman*, 96 Md. App. 256, 274 (1993) (approving jury instruction stating that a party "may rely on the same, less[,] or more evidence than was presented to the Commission"). The jury "is not so bound by the Commission's fact findings as is normally the case in administrative appeals, but is free to weigh the evidence (and the inferences from it) and reach entirely opposite conclusions." *Egypt Farms, Inc. v. Lepley*, 49 Md. App. 171, 176 (1981).

In the present case, the Commission awarded temporary total disability benefits by a decision dated January 30, 2023. The opinion explaining that decision stated: "The Commission . . . finds that [Mr. Johnson] did sustain an accidental injury arising out of and in the course of employment on or about January 27, 2022." The opinion continued: "The Commission also finds that [Mr. Johnson's] pulmonary airways disease was caused, in part, by exposure to mold which arose out of and in the course of [his] employment with [the City]."

The statement that Mr. Johnson developed "pulmonary airways disease" (or simply an "airways disease," as stated elsewhere in the opinion) was not a *decision* by the Commission. Any finding as to the exact medical diagnosis or diagnoses for Mr. Johnson's condition was an intermediate factual finding supporting the decision. Any number of different diagnoses might support a conclusion that Mr. Johnson became temporarily and totally disabled as a result of an accidental injury arising out of and in the course of his employment. Even if the jury rejected the Commission's factual findings,

25

as it was free to do, the jury would be required to uphold the Commission's ultimate decision as long as the jury concluded that the decision was correct. *See Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 222 (quoting *Liggett & Meyers Tobacco Co. v. Goslin*, 163 Md. at 78).

In his appellate brief, Mr. Johnson further argues that there was sufficient evidence for the jury to find that he suffered from a "pulmonary airways disease." According to Mr. Johnson, Dr. Hines testified that "hypersensitivity pneumonitis is a pulmonary airways disease[.]" The City disputes this characterization of the testimony. The City argues that, although Dr. Hines may have agreed "that hypersensitivity pneumonitis is a subcategory of restrictive airways disease," her testimony failed to establish that "restrictive airways disease is the same as pulmonary airways disease."

As explained above, the circuit court correctly concluded that it was immaterial whether there was sufficient evidence to find that Mr. Johnson had "pulmonary airways disease." As this case illustrates, requiring juries to uphold a decision only if they agree with supporting factual findings, such as whether the employee has a particular medical condition stated in the Commission's opinion, would produce unnecessary confusion. Often, an injured employee may have more than one potential medical diagnosis or more than one correct diagnosis. The employee's diagnosis or diagnoses may change over time with new information. Terminology used to describe one diagnosis may overlap with the terminology used for another. At a de novo trial, lay jurors are not required to decide whether they agree with a medical diagnosis described by the Commission, based on updated or additional evidence that may be substantially different from even the best

26

evidence available many months earlier. The proper focus for review is the correctness of the Commission's decision, not the findings supporting that decision.

In this case, the jury received sufficient evidence to conclude that the City had failed to prove by a preponderance of the evidence that the Commission's decision awarding temporary total disability benefits to Mr. Johnson was incorrect. The circuit court was correct when it denied the City's motion for judgment at the close of all evidence and the City's motion for judgment notwithstanding the verdict.

## II.    **Verdict Sheet**

The second issue raised in this appeal is closely related to the first issue. The City contends that the circuit court erred when it submitted a verdict sheet asking whether Mr. Johnson sustained an accidental personal injury arising out of and in the course of employment on January 27th, 2022.

Under Md. Rule 2-522(b)(2)(A), the trial court "may require a jury to return a verdict in the form of written findings upon specific issues." "For that purpose, the court may use any method of submitting the issues and requiring written findings as it deems appropriate, including the submission of written questions susceptible of brief answers or of written forms of the several special findings that might properly be made under the pleadings and evidence." *Id.* Generally, "a court's use of a particular format will not be reversed absent an abuse of discretion." *Applied Indus. Techs. v. Ludemann*, 148 Md. App. 272, 287 (2002) (citing *Owens-Corning Fiberglas Corp. v. Garrett*, 343 Md. 500, 525 (1996)).

The City observes that, when the Commission "f[ound] that [Mr. Johnson] did

27

sustain an accidental injury arising out of and in the course of employment on or about January 27, 2022[,]" the Commission "also f[ound] that [Mr. Johnson's] pulmonary airways disease was caused, in part, by exposure to mold which arose out of and in the courts of [his] employment with the [City]." The City asserts that all medical experts at trial agreed that his diagnosis "changed from pulmonary airways disease to hypersensitivity pneumonitis" after the Commission made its decision. The City contends that the circuit court erred by failing to submit what the City calls the "dispositive issue" of whether Mr. Johnson's "disability, **specifically pulmonary airways disease**, arose out of and in course of employment[.]" (Emphasis in original.)

The City's argument concerning the verdict sheet suffers from the same fatal defects as its arguments concerning the motion for judgment. The City's argument relies on the erroneous premise that the jury's role was to review the Commission's intermediate factual findings, rather than the Commission's decision.

In a de novo jury trial in review of a decision by the Commission, the jury "makes specific findings of fact on specific issues that are carefully framed and submitted to it." *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. 155, 190 (2005). At the de novo trial, the court is not "bound to submit as an issue every subordinate fact." *Schiller v. Baltimore & O.R. Co.*, 137 Md. 235, 244 (1920). Doing so "would only cause confusion." *Id.* "The facts submitted as issues should, as far as practicable, be confined to the ultimate issues involved in the finding of the Commission from which the appeal is taken, such as disability, dependency, whether the injury arose out of and in the course of employment, and the like, according to the ultimate fact or facts to be determined." *Id.*

28

In sum, the issues submitted to the jury "should be 'ultimate issues' and not issues with respect to 'every subordinate fact.'" *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 191 (quoting *Schiller v. Baltimore & O.R. Co.*, 137 Md. at 244). For example, a trial court might submit questions such as "(1) whether the claimant suffered an accidental injury arising out of and in the course of employment on [a particular date]; (2) whether the claimant's disability is causally connected to the accidental injury; and (3) for what period of time, if any, the claimant is entitled to . . . disability benefits." *Pro-Football, Inc. v. Tupa*, 197 Md. App. 463, 478 (2011), *aff'd*, 428 Md. 198 (2012).

Here, the Commission's finding that Mr. Johnson developed "pulmonary airways disease" (or simply an "airways disease") was not a finding as to any ultimate issue. That finding was an intermediate factual finding that supported the Commission's conclusions on the ultimate issues. At the de novo trial, the jury's role was not to decide whether it agreed with any or all of the intermediate factual findings stated in the Commission's opinion. Rather, the jury's role was to decide the "'*ultimate issues* . . . , such as disability[] . . . [and] whether the injury arose out of and in the course of employment[.]'" *Bd. of Educ. for Montgomery County v. Spradlin*, 161 Md. App. at 191 (emphasis in original) (quoting *Schiller v. Baltimore & O.R. Co.*, 137 Md. at 244).

At trial, the court properly selected a verdict sheet that, to the extent practicable, was confined to the ultimate issues. The first question on the verdict sheet asked whether Mr. Johnson "sustain[ed] an accidental . . . personal injury arising out of and in the course of employment on January 27th, 2022[.]" The second question asked whether Mr. Johnson was "temporarily totally disabled from January 28th, 2022 to the present" or for

"a different period of time[.]" The court was correct when it declined to submit questions concerning the intermediate factual issues of the exact medical diagnosis for the condition that produced the period of temporary total disability.

As part of its argument, the City appears to fault the circuit court for denying Mr. Johnson's motion to remand the case to the Commission to allow the Commission to consider the new evidence generated after the Commission's hearings. The City writes that, "[a]gainst the will of the parties," the court submitted the issues to the jury "rather than remand the case" to the Commission. The record shows that the City waived any right to complain about the denial of the motion for remand. At trial, the City vigorously opposed Mr. Johnson's motion for remand at the end of the City's case in chief and his renewed motion for remand at the close of the evidence. In both instances, the City argued that it would be inappropriate for the court to remand the proceedings to the Commission. The City cannot be heard to complain on appeal that the court denied the motion for remand at the City's express urging. *See* Md. Rule 2-517(c).[8]

### III.    Jury Instructions

As the next issue in this appeal, the City contends that the circuit court erred when it declined to give proposed jury instructions concerning "the law of occupational diseases."

A trial court must give a requested instruction if three requirements are satisfied:

---

[8] Because the issue is not properly raised for appellate review by either party, we express no opinion on whether the circuit court was correct in concluding that it lacked authority to remand the matter to the Workers' Compensation Commission.

"(1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given." *White v. Kennedy Krieger Inst., Inc.*, 221 Md. App. 601, 622-23 (2015) (citation and quotation marks omitted). The court has no obligation "to instruct the jury on issues not generated by the evidence." *Spengler v. Sears, Roebuck & Co.*, 163 Md. App. 220, 249 (2005). The trial court may decline to give a requested instruction if the instruction is "superfluous," "confusing," or "inapplicable to the case at hand." *S. Mgmt. Corp. v. Mariner*, 144 Md. App. 188, 199 (2002) (quotation marks omitted). This Court reviews a trial court's refusal to give a requested jury instruction under the "'highly deferential abuse of discretion standard.'" *Six Flags America, L.P. v. Gonzalez-Perdomo*, 248 Md. App. 569, 588 (2020) (quoting *Woolridge v. Abrishami*, 233 Md. App. 278, 305 (2017)).

In his initial claim with the Workers' Compensation Commission, Mr. Johnson asserted that he sustained an accidental injury on January 17, 2022, which he described as "asthma" and "respiratory issues." Mr. Johnson checked a box on the claim form to indicate that he was not making any claim based on an occupational disease. In response, the City raised two issues: whether Mr. Johnson sustained an accidental injury or occupational disease arising out of and in the course of his employment; and whether Mr. Johnson's disability resulted from an accidental injury or occupational disease arising out of and in the course of his employment.

After the hearing on October 4, 2022, the Commission determined that Mr. Johnson's condition did not meet the definition of an occupational disease and further

31

found that Mr. Johnson did sustain an accidental injury arising out of and in the course of his employment.  After the rehearing on January 19, 2023, the Commission again determined that Mr. Johnson did not sustain an occupational disease and that he did sustain an accidental injury arising out of and in the course of his employment.

The City petitioned for judicial review, challenging the Commission's determination that Mr. Johnson sustained an accidental injury.  Mr. Johnson did not file any petition or cross-petition to challenge the Commission's determination that he did not sustain an occupational disease.

At trial, the City submitted two proposed jury instructions concerning occupational diseases.  First, the City requested an instruction based on Maryland Civil Pattern Jury Instruction (MPJI-Cv) 30:9, which concerns the definition of an occupational disease.  The pattern instruction states:

> An Employee sustains an occupational disease when the Employee becomes actually incapacitated, either temporarily, partially, or totally, because of a disease contracted as the result of and in the course of employment.  The incapacity must be one which prevents the Employee from performing the work in the last occupation in which the Employee was injuriously exposed to the hazards of the disease.
>
> An occupational disease may be found in either of two ways: (1) the disease was due to the nature of the employment in which the hazard of the disease actually exist, or (2) the symptoms of the disease are consistent with those known to result from exposure to a physical, biological, or chemical agent attributable to the type of employment.
>
> To be compensable, the alleged occupational disease must be due to the nature of the employment in general rather than merely the specific job in which the Employee was working.
>
> The City further requested an instruction based on MPJI-Cv 30:11, which

32

concerns occupational diseases caused by the aggravation of a pre-existing condition.

This pattern instruction states:

> An Employee who has a pre-existing medical condition which is aggravated by [a] workplace hazard[s] is entitled compensation if the resulting condition is due in part to the occupation.

In addition to the language quoted from the pattern instruction, the City requested the following sentence, based on language from *Blake v. Bethlehem Steel Co.*, 225 Md. 196, 200-01 (1961): "The mere aggravation of a disease not occupational in character is insufficient to establish an occupational disease."

Mr. Johnson opposed the City's request for jury instructions concerning occupational diseases. Counsel for Mr. Johnson argued that these instructions were irrelevant and potentially confusing because the case did not involve any claim based on an occupational disease.

The court declined to give the proposed instructions concerning occupational diseases. The court concluded that, even if the proposed instructions were correct statements of law concerning occupational diseases, those statements of law were inapplicable to the claims for accidental injury. Consistent with its ruling, the court did not submit any questions concerning occupational diseases to the jury.

In this appeal, the City contends that the circuit court erred by declining to deliver the proposed jury instruction based on MPJI-Cv 30:11 and *Blake v. Bethlehem Steel Co.*. The City argues that the court's ruling impaired the City's right to present a "defense[] to compensability[.]" The City asserts that, under Maryland law, "the ***mere aggravation of a disease not occupational in character*** is insufficient to establish compensability."

33

(Emphasis in original.)  The City argues that its proposed jury instruction "regarding aggravation of non-occupational diseases was a correct statement of law" and "would [have] help[ed] clarify" an "issue" for the jury.

Contrary to the City's argument, *Blake v. Bethlehem Steel Co.* does not state that "the mere aggravation of a disease not occupational in character is insufficient to establish compensability."  The correct quotation is: "'The mere aggravation of a disease not occupational in character is insufficient to establish *an occupational disease*.'"  *Blake v. Bethlehem Steel Co.*, 225 Md. at 200-01 (emphasis added) (quoting *Smith v. Sports Room Supper Club*, 181 N.Y.S.2d 130, 132 (N.Y. App. Div. 1958)).  By its terms, this proposition is limited to the issue of what constitutes an occupational disease.  This proposition does not establish any "defense[] to compensability" outside of an occupational disease claim.

*Blake v. Bethlehem Steel Co.* concerns the definition of an "occupational disease" under the Workers' Compensation Act.  In that case, the employee had worked as a pipe fitter's helper at a steel mill.  *Blake v. Bethlehem Steel Co.*, 225 Md. at 198.  The employee presented evidence that his working conditions in and around furnaces aggravated his preexisting condition of chronic bronchitis.  *Id*. at 197-98.  The evidence failed to establish that "chronic bronchitis and its sequelae were . . . characteristic of the industry" in which the employee worked.  *Id.* at 200.  The Court concluded that, even though the employee had presented evidence that his "working conditions aggravated the nonoccupational bronchial condition," the employee had failed to show that his condition could "properly be attributed, in whole or in part, to an occupational disease."  *Id.*  The

Court rejected the argument that "an ordinary disease may become occupational where it is aggravated by the occupational environment." *Id.* In support of its conclusion, the Court favorably quoted an opinion in which an intermediate appellate court had stated: "'The mere aggravation of a disease not occupational in character is insufficient to establish an occupational disease.'" *Id.* at 200-01 (quoting *Smith v. Sports Room Supper Club*, 181 N.Y.S.2d at 132).[9]

The Maryland Workers' Compensation Act "provides for the compensation of accidental injuries arising out of and in the course of employment and occupational diseases that are contracted as the result of and in the course of employment." *Luby Chevrolet, Inc. v. Gerst*, 112 Md. App. 177, 183 (1996). In many respects, the Act "treats accidental injuries differently from occupational diseases." *Waters v. Pleasant Manor Nursing Home*, 361 Md. 82, 99 (2000). Because there are "fundamental difference[s] in determining benefits for occupational diseases versus accidental injuries[,] . . . occupational disease benefits should be analyzed differently than accidental injury benefits." *Id.* at 98.

Under the Act, "[a]n occupational disease is compensable only if the risks of the

---

[9] *Blake v. Bethlehem Steel Co.* does not stand for the proposition that an occupational disease can never result from the aggravation of a preexisting condition. "'[U]nder the *Blake* analysis the focus is not whether the pre-existing condition is occupational in character but whether the resulting condition is due, in part at least, to the occupation." *Black & Decker Corp. v. Humbert*, 189 Md. App. 171, 183 (2009) (emphasis omitted) (quoting *Allied-Signal, Inc. v. Bobbitt*, 96 Md. App. 157, 167 (1993), *rev'd on other grounds*, 334 Md. 347 (1994)). To be compensable as an occupational disease, "'it is the risk factors, not the disease, that must inhere in the nature of the employment.'" *Baltimore County v. Quinlan*, 466 Md. 1, 22 (2019) (quoting with approval *Black & Decker Corp. v. Humbert*, 189 Md. App. at 187).

35

disease are inherent to the nature of the employment." *Luby Chevrolet, Inc. v. Gerst*, 112 Md. App. at 190. The Act requires compensation for an occupational disease "only if . . . the occupational disease . . . is due to the nature of an employment in which hazards of the occupational disease exist" or "has manifestations that are consistent with those known to result from exposure to a biological, chemical, or physical agent that is attributable to the type of employment in which the covered employee was employed[.]" Lab. & Empl. § 9-502(d)(1). Accordingly, "[i]n order to maintain a claim for occupational disease, a claimant must show, in addition to a causal link to the employment, that the hazards of the disease are inherent to the nature of the employment, i.e., nonaccidental." *Luby Chevrolet, Inc. v. Gerst*, 112 Md. App. at 183. By contrast, to maintain a claim for an accidental injury, an employee has no obligation to prove that the injury resulted from "'a risk inherent to the nature of employment.'" *Waters v. Pleasant Manor Nursing Home*, 361 Md. at 99 (quoting *Luby Chevrolet, Inc. v. Gerst*, 112 Md. App. at 191).

In the present case, Mr. Johnson raised no claim based on an alleged occupational disease, either in the Commission or in the circuit court. His claim for compensation was limited to a claim for an accidental injury. The Commission determined that Mr. Johnson did not sustain an occupational disease and awarded benefits solely based on an accidental injury. The trial court correctly determined that proposed jury instructions about the requirements for proving an occupational disease were inapplicable. Moreover, as counsel for Mr. Johnson aptly observed, the proposed instructions about occupational diseases could have created confusion among the jurors by injecting a new issue into the

36

case. Worse yet, the City's proposed instructions might have misled the jury into believing that Mr. Johnson's injury was not compensable as an accidental injury if it resulted from the aggravation of a pre-existing condition.[10] The circuit court did not err or abuse its discretion in refusing to give instructions about proof of an occupational disease.

The City further argues that, by failing to deliver the requested instructions, the trial court "removed the burden to prove proximate cause from [Mr. Johnson.]"[11] This argument is without merit. In accordance with MPJI-Cv 30:3, the court instructed the jury that "[a]n accidental injury is one that arises out of [and] in the course of employment, and which is not intended by the employer." In accordance with MPJI-Cv 30:12, the court instructed the jury that, "[i]n order to be compensable there must be proof that the injury could have been caused by the accident and nothing else after the accident occurred to cause the injury." The court gave appropriate instructions concerning the issue of causation of an accidental injury. The court was not required to give any instructions about causation of an occupational disease, where no occupational

---

[10] *See Employees' Ret. Sys. of City of Baltimore v. Dorsey*, 430 Md. 100, 117-18 (2013) (explaining that "a preexisting condition that is worsened by an accidental injury does not automatically disqualify an employee from receiving workers' compensation benefits, provided there is some causal relationship between the compensable accident and the injury sustained").

[11] Strictly speaking, Mr. Johnson had no burden to prove causation at trial. Because the Commission had determined that Mr. Johnson was entitled to temporary total disability benefits, Mr. Johnson no longer had any burden of proof. *See Calvo v. Montgomery County*, 459 Md. 315, 325 (2018). The City, as the party challenging the Commission's decision, had the burden to prove that the decision was incorrect. *See Baltimore County v. Kelly*, 391 Md. 64, 75-76 (2006).

disease was found or claimed.

## IV.    Admission of Photographs

As the final issue in this appeal, the City contends that the circuit court erred when it allowed Mr. Johnson to introduce photographs purporting to show mold in rooms in the Barn office building where he had worked. The City argues that the court should have precluded Mr. Johnson from introducing the photographs as a sanction for an alleged discovery failure.

In February 2022, shortly after Mr. Johnson notified his supervisors about the mold that he encountered while working in the Barn office building, the City hired a contractor to inspect the basement level of the building. As part of the inspection, the contractor collected samples and took photographs of the areas of suspected mold.

During his testimony at trial, Mr. Johnson sought to introduce photographs showing mold in rooms on the basement level of the Barn building. Mr. Johnson testified that the photos fairly and accurately represented the condition of the building when he was working there in 2021 and 2022.

The City objected to the admission of the photographs, asserting that those photographs were "not disclosed in discovery." The City asserted that it had previously sent a discovery request asking Mr. Johnson to produce documents or photographs that he intended to introduce at trial and that Mr. Johnson had represented that he did not have any such photographs in his possession.

In response, counsel for Mr. Johnson asserted that a contractor hired by the City had taken the photographs and that the City had previously disclosed the photographs.

38

Counsel for Mr. Johnson also asserted that the photographs had been introduced previously at a hearing before the Commission.

The court asked the City to explain how it might have sustained any prejudice from "the failure to respond to discovery" if the City "already knew . . . what these pictures looked like[.]" In response, the City stated that, if Mr. Johnson had disclosed that he intended to use the photographs at trial, then the City "might have had somebody from [the contractor] come in here to talk about the photographs[.]" The City stated that it "[p]otentially" might have called the contractor to testify about where and when the photographs were taken.

The court denied the objection to the admission of the photographs. The court explained: "The photographs themselves are not a surprise. The intention to introduce them may be a surprise[.]" As a "remedy" for the purported "discovery violation," the court ruled that it would not admit the photographs into evidence until after the City had the opportunity to cross-examine Mr. Johnson about "the origin" of the photographs. During cross-examination, Mr. Johnson admitted that he did not know who took the photographs, but he reiterated that the photographs accurately depicted the condition of the building when he worked there.

After cross-examination, the City renewed its request to exclude the photographs from evidence based on the "failure to disclose [the photographs] in discovery." The City agreed with the court's observation that the "existence" of the photographs "was not a surprise[,]" and that the only new information was Mr. Johnson's intention to use the photos at trial. The court overruled the City's objection. The court said that it

39

"recognize[d] [that] there was a discovery violation[,]" but concluded that "the prejudice [was] very limited" under the circumstances.

In this appeal, the City contends that the circuit court erred by permitting Mr. Johnson to introduce photographs purporting to show mold at his work environment. The City asserts that it "reasonably relied" on discovery responses indicating that Mr. Johnson did not intend to offer photographs at trial. In his response to a request for production of "[a]ll photographs . . . relating to the happening of the injury," Mr. Johnson wrote: "None in our possession." In his response to a request for production of "[a]ll other documents which [he] propose[d] to introduce into evidence or rely upon at the hearing or trial[,]" Mr. Johnson referred to an attachment which did not include the photographs in question. The City acknowledges that it was "aware of the existence of the photographs" but complains that it had "no notice that [Mr. Johnson] intended to introduce the photos into evidence" at trial.

Maryland's discovery rules provide that a trial court, "if it finds a failure of discovery, may enter such orders in regard to the failure as are just, including . . . [a]n order . . . prohibiting [the failing party] from introducing designated matters in evidence[.]" Md. Rule 2-433(a)(2). "[T]he appropriate sanction for a discovery . . . violation is largely discretionary with the trial court[.]" *Admiral Mortg., Inc. v. Cooper*, 357 Md. 533, 545 (2000). Because "addressing a discovery violation and imposing a sanction for such a violation are matters wholly within the trial court's discretion, . . . appellate review is limited to determining whether an abuse of that discretion occurred." *Dackman v. Robinson*, 464 Md. 189, 236 (2019). Under this standard, an appellate court

40

will not "second-guess the [trial] court's ruling" unless the trial court "exercised its discretion in a manner that was 'manifestly unreasonable, or [ ] on untenable grounds, or for untenable reasons.'" *Id.* at 235 (quoting *Levitas v. Christian*, 454 Md. 233, 243 (2017)).

When determining whether to impose a discovery sanction, the trial court should consider: "'(1) the reasons why the disclosure was not made; (2) the existence and amount of any prejudice to the opposing party; (3) the feasibility of curing any prejudice; and (4) any other relevant circumstances.'" *Dackman v. Robinson*, 464 Md. at 231-32 (quoting *Beka Indus., Inc. v. Worcester Cnty. Bd. of Educ.*, 419 Md. 194, 232 (2011)). "'[E]xclusion of evidence for a discovery violation is not a favored sanction and is one of the most drastic measures that can be imposed.'" *Butler v. S & S P'ship*, 435 Md. 635, 662 (2013) (quoting *Thomas v. State*, 397 Md. 557, 572 (2007)). Discovery sanctions are not intended to "operate as a windfall, but instead are intended to relieve the surprise or prejudice a party suffers when [the party's] opponent fails to abide by the discovery rules." *Watson v. Timberlake*, 251 Md. App. 420, 437 (2021). Ordinarily, "'in fashioning a sanction, the court should impose the least severe sanction that is consistent with the purpose of the discovery rules[.]'" *Id.* (quoting *Thomas v. State*, 397 Md. at 571). The basic purpose of the discovery rules is "to require a party litigant, in response to a discovery request, to disclose fully all of the facts requested by adversaries and, thereby, eliminate, as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind concerning the facts that gave rise to the litigation[.]" *Food Lion v. McNeill*, 393 Md. 715, 717-18 (2006).

In the present case, the City has failed to show that the trial court abused its discretion. Without the need for any disclosure from Mr. Johnson, the City knew of the existence of the photographs as well as the content of those photographs. By all indications, the City was the source of the photographs. The City had hired the contractor to perform a mold inspection in February 2022. The City obtained the mold inspection report, which included the photographs in question. The City's expert witnesses, Dr. Parkerson and Dr. Cheung, both considered the results of the inspection as part of the basis for their expert medical opinions. Moreover, it appears that Mr. Johnson previously offered the report as an exhibit at the Commission hearing on January 19, 2023. Accordingly, it appears that the City not only had notice that Mr. Johnson possessed the document that included the photographs, but also had notice that he had previously relied on that document in support of his claim for compensation.

Arguably, Mr. Johnson should have informed the City, in his written discovery response, that he was in possession of the photographs that he had previously obtained from the City and presented to the Commission. But even if his failure to mention that information amounts to a discovery violation, any prejudice resulting from the failure was minimal. The circuit court acted well within its discretion in concluding that the potential prejudice to the City did not justify the exclusion of the photographs from evidence. *See Zachair, Ltd. v. Driggs*, 135 Md. App. 403, 438 (2000) (concluding that party sustained no prejudice from opposing party's failure to reveal intention to call attorney as an expert witness on the issue of attorney fees, where it was "clear that they were aware" that the opposing party was seeking to recover its attorney fees and where

there was "no reason to believe that they did not have sufficient opportunity to prepare a defense"); *Bartholomee v. Casey*, 103 Md. App. 34, 49 (1994) (concluding that trial court did not abuse its discretion in allowing plaintiffs to introduce evidence concerning lead paint on exterior of house, despite deficient interrogatory answers, where the defendant had received notice of the presence of lead paint on the exterior of the house and "could hardly claim to have been surprised by plaintiffs' desire to place that evidence before the jury").

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**